313 So.2d 518

**Mildred PLANT, surviving widow of Tramble Plant, Deceased**

v.

**R. L. REID, INC., a corp., et al.**

**SC 1082.**

Supreme Court of Alabama.

May 22, 1975.

Cunningham, Bounds & Byrd, Mobile, for appellant.

Alex T. Howard, Jr., Mobile, for appellees.

SHORES, Justice.

The constitutionality of Act No. 788, Acts of Alabama 1969, page 1418 (Title 7, § 23(1), Code of Alabama 1940, Recompiled 1958), is before us again. The seven-year provision of that act was declared unconstitutional in Bagby Elevator & Electric Co., Inc. v. McBride, 292 Ala. 191, 291 So.2d 306 (1970).

The facts are not disputed. On November 25, 1972, Tramble Plant, while working as an employee of the Alabama State Docks, was killed when his hands became caught between the drum or pulley and a conveyor belt, causing him to be pulled into the conveyor system. Prior to this occurrence the conveyor system had been altered in accordance with plans and specifications prepared by the defendant, R. L. Reid, Inc. Plant's surviving widow filed an action under the provisions of Title 26, § 312, Code of Alabama 1940, Recompiled 1958, against R. L. Reid, Inc. alleging that her husband's death was caused by Reid's negligence in designing the equipment.

Defendant Reid filed an answer in which it claimed that the plaintiff's action was barred by the "applicable" statute of limitation of the State of Alabama. The facts are:

(1) Plant was injured on November 25, 1972.

(2) The work done on the conveyor system which caused Plant's death was completed by Reid on or before October 31, 1965, more than four years prior to the time of the accident.

(3) The complaint in this action was filed on November 15, 1973, more than six months after discovery of the injury which caused Plant's death.

The trial court granted defendant's motion for judgment dismissing the action. The appeal is from that judgment.

The act provides:

"Act No. 788

"AN ACT

"To regulate further the time within which actions against persons who performed or furnished the design, planning, supervision or construction of improvements on real property, whether based on contract or tort, for damages arising out of any act or omission of such persons in the design, planning, supervision, or construction of such improvements must be commenced.

"*Be It Enacted by the Legislature of Alabama:*

"*Section 1.* All actions against persons who performed or furnished the design, planning, supervision or construction of improvements on real property, whether based on contract or tort, for damages arising out of any act or omission of such persons in the design, planning, supervision or construction of such improvements, must be commenced within four years after the final completion of such improvements, and not afterwards. Provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than seven years after such act or omission.

"*Section 2.* The provisions of this Act are severable. If any part of the Act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.

"*Section 3.* All laws or parts of laws which conflict with this Act are repealed.

"*Section 4.* This Act shall take effect immediately upon its passage and approval by the Governor, or upon its otherwise becoming law; but it shall apply only to causes of action arising subsequent to the effective date of this Act.

"Approved September 12, 1969.

"Time: 4:57 P.M."

Neither the holding nor the rationale of *Bagby* is challenged here, and we reaffirm that decision as a prelude to consideration of the validity of the remainder of the act. That is the question presented: Whether the remainder of the act, absent the seven-year provision, is violative of the Constitution.

As noted in *Bagby*, some thirty states have enacted similar statutes designed to limit the time during which actions may be brought against architects, designers, engineers, etc.

The jurisdictions which have considered the constitutionality of these statutes are about equally divided in the results reached. Carter v. Hartenstein, 248 Ark. 1172, 455 S.W.2d 918 (1970); Fujioka v. Kam, 55 Haw. 7, 514 P.2d 568 (1973); Skinner v. Anderson, 38 Ill.2d 455, 460, 231 N.E.2d 588, 591 (1967); Saylor v. Hall, 497 S.W.2d 218 (Ky.1973); Rosenthal v. Kurtz, 62 Wis.2d 1, 213 N.W.2d 741 (1974), rehearing denied 216 N.W.2d 252 (1974); Carr v. Miss. Valley Electric Co., 285 So.2d 301 (La.App.1973); Nevada

Lakeshore Co. v. Diamond Electric Co., Inc., 89 Nev. 293, 511 P.2d 113 (1973); Josephs v. Burns & Bear, 260 Or. 493, 491 P.2d 203 (1971); Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co., 81 Wash.2d 528, 503 P.2d 108 (1972); and Rosenberg v. Town of North Bergen, 61 N.J. 190, 293 A.2d 662 (1972).

These statutes are unlike traditional statutes of limitation in that, by the very nature of the traditional statute, it bars a cause of action solely because the plaintiff has slept on his rights and has not asserted a claim during a period when it could be successfully maintained. In tort cases, the date from which the traditional statute of limitations begins to run is the date upon which the cause of action accrues, normally the date the injury occurs. Brotherhood of Locomotive Firemen & Eng. v. Hammett, 273 Ala. 397, 140 So.2d 832 (1962). Act No. 788 requires that the action be commended ". . . within four years after the final completion of such improvements, and not afterwards. . . ." The act goes on to include a "six months after discovery" of the cause of action saving clause.

Our analysis of the act requires an examination of the effect of these two clauses as applied to various factual situations.

For example:

What period of time is allowed for the filing of an action claiming damages for injury occurring one day after completion of improvement? Does the plaintiff have four years less one day in which to bring his action or does the general one-year statutory limitation apply? (Title 7, § 26, Code)

Conversely, should one be injured one day short of four years after completion of the improvements, does he have but one day to file suit, six months, or does the one-year statute apply?

If one is injured ten years after the final completion date, does the four-year provision extinguish the right; or does the six-month clause apply affecting the remedy only, and he has that period in which to assert the right?

If the injury results in death, does the personal representative have either four years, two years, or six months after death (or after final completion) for bringing an action for wrongful death depending solely upon whether the death occurred immediately after completion of the improvements, sometime during the four-year period after completion, within six months of the fourth anniversary thereof, or after the completion date plus six months?

In a wrongful death case, has Act No. 788 repealed, by implication, Title 7, § 123, Code, which prescribes as a substantive element of the cause of action, the requirement that it be brought within two years?

Does the passing of four years completely extinguish the right, although no injury has yet occurred, or does one have six months after "discovery" to bring suit regardless of how long the improvements have been conpleted?

The latter interpretation is inconsistent with the first, but such an interpretation is compelled to give any meaning to the six months' provision.

These are troublesome questions.

Litigants should be penalized for failing to assert timely claims and persons should be protected against the burdens of defending stale claims. These subjects are appropriate ones for legislative action, but Act No. 788, at least in tort cases, raises more questions than it answers.

It has been suggested that these statutes are analogous to the medical malpractice statutes. Alabama's is carried in Title 7, § 25(1), Code, and its constitutionality has been upheld in Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972). However, there is an immediate difference readily apparent. The medical malpractice Act provides that:

"All actions . . . . must be commenced within two years next *after the act or omission or failure giving rise to the cause of action,* and not afterwards. . . ." (Emphasis Supplied)

■ Under the provisions of this act, the time for bringing suit commences when the cause of action accrues, which is at the time of the wrongful act or omission producing injury. The "plaintiff" has a cause of action at that point. If the cause of action (injury) is not discovered within the two-year period, it may be asserted within six months after discovery. The distinction between the two acts is apparent. The medical malpractice statute is a traditional statute of limitation in that the accrual of the cause of action starts the running of the period. In Act No. 788, the date of completion of the improvements starts the running of the period at a time when no cause of action in tort necessarily has accrued.

[2-4] A party has a right to bring an action in contract when the other party breaches the agreement. In tort actions, the breach of duty does not produce a cause of action until such breach proximately results in injury or damage. The statute of limitations begins to run from the time of injury in tort cases. The soundness of this rule has rarely been questioned and the malpractice statutes are not inconsistent with it.

■■ It is the prerogative of the legislature to fix the time in which causes of action must be commenced. A plaintiff's delay in asserting a right within the time prescribed by the legislature may be fatal to his suit, and no court will excuse his delay if the time provided is reasonable, reasonableness being primarily a legislative matter.

If Act No. 788 is read to bar all claims not discovered and asserted within four years of completion of improvements to real estate, it is a radical departure from the traditional justification of statutes of limitation based upon a plaintiff's delay. If it is construed to allow claims without regard to how long the improvements have been completed, conditioned only upon the plaintiff's bringing the action within six months after its accrual, the two provisions are incompatible, since such an interpretation would allow the six months' clause to revive a right of action extinguished by the four-year provision.

■ Saving clauses necessarily contemplate the running of the period of limitation against an accrued cause of action and thus excuse for an extended period, for lack of discovery, the assertion of the claim. Both the medical malpractice Act and the saving statute for fraud actions (Title 7, § 42, Code) demonstrate this principle. In this case, if the four-year provision is given operative effect, the right of action was extinguished prior to the injury causing death, and the saving clause can logically have no operation.

We cannot say which, if either effect, the legislature intended. In adopting Act No. 788, Alabama followed a model act enacted in a number of states about the same time. An excellent article appearing in 18 Catholic University Law Review 361 (1969), Limitation of Action for Architects and Builders—Blueprints for Non-Action, traces the history of the statutes, and points out their constitutional vulnerability. The article recognizes, as we do, the obvious need for some protection to be afforded architects and builders, but points out the failure of the model act to meet that objective. We think Act No. 788 fails in that objective.

■ In granting immunity from suit, the legislature is limited only by Article 1, § 13, Constitution 1901, and must not act arbitrarily or capriciously. Unquestionably, it may fix the time in which suits may be brought, and is the primary judge of what constitutes a reasonable time for

doing so, so long as it is not so limited as to deny justice. Mills v. Scott, 99 U.S. 25, 12 L.Ed. 1201 (1878). Further, legislative classification is not prohibited per se, so long as the classification is reasonably related to a legitimate object of the legislation.

■ Some of the states have found that similar legislation violates one or the other of these well-recognized constitutional restraints. Arguably, Act No. 788 might be subject to the same criticism. However, in applying accepted rules of statutory construction, we cannot say which of the various interpretations of the act the legislature intended. Neither of the two provisions should operate to defeat the effect of the other, nor can they be reconciled to give operative effect to both. As pointed out by Chief Justice Heflin in his concurring opinion in *Bagby*, ". . . these two provisions can not be intermeshed without vagueness, indefiniteness and uncertainty." We agree, and therefore must hold that in tort actions, Act No. 788 is void for that infirmity. It is our responsibility:

". . . to declare legislative enactments inoperative and void for uncertainty in meaning where they are so incomplete, so conflicting, or so vague and indefinite that the court is unable, by the application of the accepted rules of construction, to determine what the legislature intended. . . ." Marshall County Board of Education v. State, 252 Ala. 547, 550, 42 So.2d 24, 26 (1949).

See also: Opinion by the Justices, 249 Ala. 88, 30 So.2d 14 (1947); Dewrell v. Kearley, 250 Ala. 18, 32 So.2d 812 (1947); and Mims v. Blanton, 272 Ala. 457, 131 So.2d 861 (1961).

■ It follows that the judgment appealed from must be reversed and remanded. The applicable statute of limitation in this case, in view of our holding here, is controlled by Liberty Mutual Ins. Co. v. Lockwood Greene Eng., Inc., 273 Ala. 403, 140 So.2d 821 (1962), which held that the period prescribed by Title 7, § 123 (the wrongful death statute), governs in a Title 26, § 312, action.

Reversed and remanded.

HEFLIN, C. J., and FAULKNER, JONES and EMBRY, JJ., concur.

ALMON, J., concurs specially.

MERRILL, BLOODWORTH and MADDOX, JJ., dissent.

ALMON, Justice (concurring specially):

I concur in that portion of the majority opinion which holds that the legislative act in question is inoperative and void for vagueness as it exists after Bagby Elevator & Electric Co., Inc. v. McBride, 292 Ala. 191, 291 So.2d 306.

I do not concur with the conclusions regarding the medical malpractice act in Title 7, § 25(1), Code. At this time I do not think it is necessary to place a construction upon that act.

BLOODWORTH, Justice (dissenting).

This is a close case in my judgment. Justice Shores' opinion for the majority is well written and persuasive. Nevertheless, I have concluded that Act 788, as construed by our holding in Bagby Elevator and Electric Co., Inc. v. McBride, 292 Ala. 191, 291 So.2d 306 (1974), now provides that such actions must be commenced within four (4) years after the final completion of the improvements, unless the cause of action is not discovered and could not reasonably have been discovered within such period, when an additional six (6) months is allowed. It is my view that the Act now constitutes an "open end" statute with no period of limitation of years within which to bring the action under the exception, ex-

cept the six (6) months after discovery of the cause of action, etc.

Due to the fact that plaintiff, in the instant case, did not bring her action within the six (6) months' period, I would affirm the trial court's judgment holding her action to be barred.

I would reserve my judgment as to whether the same reasoning, which impels the majority to reach their conclusions with respect to Act 788, also applies to the "Medical Malpractice Act."

I see no need to answer the various theoretical situations which *might* arise under the statute as we are here confronted only with the factual context in which this case *did* arise.

I consider the Act to be workable and not inoperative and void for vagueness as the majority holds. It is therefore that I dissent.

MADDOX, Justice (dissenting).

In *Bagby,* I set out, in a lengthy dissent, my reasons for believing that Act No. 788 was constitutional. I am still persuaded that I was right then, and I believe I am right now. A reasoned study of my dissent there will answer every question raised in the majority opinion. Consequently, no useful purpose would be served by restating my views again, but I would like to call attention to the fact that some other courts, both state and federal, in addition to those shown in my dissent in *Bagby,* have found no constitutional problem raised by such "shield" statutes. See Nevada Lakeshore Co. v. Diamond Electric, Inc., 89 Nev. 293, 511 P.2d 113 (1973); Carr v. Miss. Valley Electric Co., 285 So.2d 301 (La.App.1973); Smith v. Allen-Bradley Co. et al, 371 F.Supp. 698 (W.D.Va.1974).

In *Carr,* the Louisiana court said:

"The wisdom of the legislature in enacting this law cannot be questioned by this court. The law was passed for a specific purpose, i. e., to put at an end, at some definite period of time, claims arising from construction. It has the effect of creating a hardship in some instances. At the same time it has the effect of preventing a hardship to contractors who would have to defend a suit for damages occasioned more than ten years after their performance was completed."

A federal court, construing a Virginia "shield" law, said practically the same thing the Louisiana court said in *Carr.* In Smith v. Allen-Bradley Co. et al, supra, the plaintiff argued that the Virginia statute barred his cause of action before it accrued (an argument made both in *Bagby* and here), and because it was a bar, the statute prevented any hearing for redress of an alleged wrong committed by a private party.

The Federal District Judge held:

"* * * The answer to this is simply that the legislature, in its infinite wisdom may, within limits of rationality, determine what are actionable wrongs and the time limits within which lawsuits must be brought to redress such wrongs. The legislative determination that there should be a five-year cut off for actions to recover damages arising out of defective improvements to real property is clearly rational particularly in light of the abolition of lack of privity as a defense to such actions."

I think the majority is wrong, but I can do nothing about it except register my dissent respectfully, which I have done now on two occasions.

MERRILL, J., concurs.