Jerome Jackson was injured by an electric arc furnace at the Autlan Manganese Corporation plant near Theodore, Alabama. His claims against the appellees, McDowell-Wellman Engineering Corporation and Mannesmann Demag Corporation, were based on the Alabama Extended Manufacturer's Liability Doctrine and on negligence. The trial court granted a summary judgment in favor of the defendants, based on Alabama's statute of repose regarding *Page 726 
improvements to real estate, § 6-5-218, Code of Alabama 1975, which reads as follows:
 "(a) No action in tort, contract or otherwise shall be commenced against any person performing or furnishing the design, planning, supervision or observation of construction or the construction of an improvement to real property more than seven years after the substantial completion of such improvement for the recovery of damages for:
 "(1) Any deficiency in the design, planning, supervision or observation of construction or construction of such an improvement; or
 "(2) Injury to real or personal property caused by any such deficiency; or
 "(3) Injury to or wrongful death of a person caused by any such deficiency.
 "(b) The prohibition provided in this section shall apply to any action commenced against a person for his own act, or failure to act, or for the act, or failure to act, of his employees; likewise, the prohibition contained in this section shall extend to every demand, whether commenced by direct action or for contribution or indemnity or by third-party practice and whether commenced by an owner of the subject improvement or by any other person.
 "(c) Where an action for damage for wrongful death or injury to a person or damages to property, caused by any deficiency in an improvement to real property, is commenced against a person in actual possession or control as owner, tenant or otherwise of such improvement, the prohibition prescribed by this section shall not be a defense for such person.
 "(d) This section shall not be construed to extend any applicable statute of limitations or time for commencing civil actions against any person performing or furnishing the design, planning, supervision or observation of construction or the construction of an improvement to real property.
 "(e) As used in this section, the word `person' shall mean an individual, partnership, corporation, association or any other legal entity."
Buildings, bridges, and other improvements to real property often have long life expectancies. Since the statute of limitations for negligence runs from the date of the plaintiff's injury, not from the date of the act causing the injury, the potentially long interval between the time architects, contractors, or other members of the construction industry commit an allegedly negligent act or omission and the time of the resulting injury results in exposure to liability of people in the construction industry long after the improvement in question has been completed. In an attempt to limit that exposure, the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors of America lobbied for enactment of statutes limiting the period subsequent to the construction of a given improvement during which an action might be brought for injuries allegedly caused by architects or other construction personnel. As a result of their lobbying efforts, numerous states passed statutes associating the accrual of a cause of action with the conclusion of construction rather than with the resulting injury to the plaintiff. See Rogers, TheConstitutionality of Alabama's Statute of Limitations ForConstruction Litigation: The Legislature Tries Again, 11 Cum.L.Rev. 1 (1980); Comment, Limitation of Action Statutes forArchitects and Builders — Blueprints for Non-action, 18 Cath.U.L.Rev. 361 (1969).
In 1969 the Alabama legislature adopted a statute designed to protect architects and builders. Act No. 788, Acts of Alabama, 1969 — Title 7, § 23 (1), Ala. Code (Supp. 1973). The statute required that all actions based on the construction of improvements on real estate be commenced within four years of the final completion of the improvement or within six months of the time the cause of action was discovered or should have been discovered, but in no event later than seven years after the act or omission complained of. In Bagby Elevator and ElectricCo. v. McBride, 292 Ala. 191, *Page 727 291 So.2d 306 (1974), we recognized that the statute was not a traditional statute of limitations regulating the time during which an action could be brought; it was a substantive limitation that actually prevented a cause of action from accruing or vesting in cases where the injury occurred more than seven years after the act or omission causing the injury. We struck down the seven-year limitation as violative of the Alabama constitutional requirement that a bill's title clearly express its subject and that its body contain only one subject. Ala. Const. Art. IV § 45. In a subsequent decision, Plant v.R.L. Reid, Inc., 294 Ala. 155, 313 So.2d 518 (1975), we ruled that the remainder of the statute was too vague to enforce.
In 1969 the legislature authorized the governor to appoint a code commissioner to recodify the statutes of Alabama, a task assigned by the State to the Michie Company. Rather than omitting § 23 (1), which had by that time been ruled unconstitutional, § 6-5-218 was added. The new section was derived from old § 23 (1) and was rewritten in an attempt to cure the defects which caused the statute to be struck down inBagby Elevator and Plant. The new code containing the statute in question was adopted by the legislature in February, 1977. Act No. 20, Acts of Ala., 1977. [The information regarding the recodification process was taken from Comment, 1975-A CodeOdyssey: A Critical Analysis of The Alabama RecodificationProcess, 10 Cum.L.Rev. 119 (1979).]
On appeal the plaintiff argues that § 6-5-218 is unconstitutional on the following grounds:
(1) That the act violates § 13 of the Alabama Constitution, the open court provision.
(2) That the act violates the equal protection clauses of the United States and Alabama constitutions.
(3) That the method of enactment of § 6-5-218 violated § 45 of the Alabama Constitution.
(4) That the act violates the due process clauses of the United States and Alabama constitutions.
Article 1, Section 13, of the Alabama constitution provides "[t]hat all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."
In Lankford v. Sullivan, Long Hagerty, 416 So.2d 996 (Ala. 1982), we ruled that Alabama's products liability statute of repose violated Section 13. The statute in Lankford, which was a statute of repose like the one at issue here, not only limited the period of time during which an action could be brought, but also prevented a cause of action from accruing for injuries caused by products which were put into use more than ten years before they caused the injury. Both statutes abolished causes of action theretofore known under Alabama law. The products liability statute abolished causes of action for injuries caused by products over ten years old; the architect's statute abolished actions for injuries caused by improvements to real property over seven years old.
Admittedly, given this court's decision in Lankford, appellees can prevail only if they are able to distinguish §6-5-218 from the products liability statute. Appellees first argue that when we spoke of depriving one of a cause of action we were referring to a vested or accrued cause of action. They go on to argue that § 13 guarantees extend only to vested causes of action. The defendants would have us equate § 13 with the due process clause. While there is authority in Alabama for that position, e.g., Pickett v. Matthews, 238 Ala. 542,192 So. 261 (1939), we refused to adopt that construction in Lankford.
Appellees then point to three grounds which, they argue, support their contention that § 6-5-218, unlike the products liability statute, was a legitimate exercise of the state's police power in an attempt to eradicate *Page 728 
a perceived social evil.[1] See Lankford, supra, at 1001-1003. First, they argue that buildings and other structures have a relatively long life span vis-a-vis manufactured products. Therefore, they argue, the statute was a reasonable attempt to limit what might otherwise amount to an exposure to liability for an unlimited period of time.
We are of the opinion that the comparatively longer useful life of a building or other improvement militates against, rather than in favor of, the conclusion advocated by the defendants. In Lankford we pointed to the long life expectancy of certain types of products as indicative of the inherent unfairness of a statute which arbitrarily limits the rights of injured parties irrespective of the useful life of the products. Lankford, supra, at 1002-1003. As Chief Justice Torbert stated in his concurring opinion in Lankford, "A manufacturer should be required to produce a product that can be safely used during the period of its intended use, not for some arbitrary period of time that is applied to all products," 416 So.2d at 1006, quoting Comment, Alabama's ProductsLiability Statute of Repose, 11 Cum.L.Rev. 163, 180 (1980). That rationale applies a fortiori to the case at bar.
Next, the defendants argue that "the longer the period of time between the completion of the structure and the injury, the greater the opportunities for some intervening negligence to occur." The defendants' argument fails to take into account the requirement of the plaintiff to prove that his injuries were the proximate result of the defendants' negligence. If the injury in question was the result of the intervening negligence of the owner or some other third party, the plaintiff would not, of course, be entitled to recover against the builder. The problem with the defendants' argument is that latent defects in a building caused by the builder may not produce injuries until the seven year period has elapsed. The fact that an injured plaintiff would still have a cause of action against the owner of the building is not sufficient to justify insulating the builder from all liability. If the plaintiff proves that his injuries were the proximate result of the builder's negligence, recovery should be had against the builder.
Finally, the appellees argue that § 6-5-218 protects against the defendant's having to mount a defense with "stale evidence." In Overland Construction Co. v. Sirmons,369 So.2d 572 (Fla. 1979), the Supreme Court of Florida, in striking down a similar statute as offensive to that state's "open court" provision in its constitution, replied to a similar argument:
 "We recognize the problems which inhere in exposing builders and related professionals to potential liability for an indefinite period of time after an improvement to real property has been completed. Undoubtedly, the passage of time does aggravate the difficulty of producing reliable evidence, and it is likely that advances in technology tend to push industry standards inexorably higher. The impact of these problems, however, is felt by all litigants. Moreover, the difficulties of proof would seem to fall at least as heavily on injured plaintiffs, who must generally carry the initial burden of establishing that the defendant was negligent. In any event, these problems are not unique to the construction industry, and they are not sufficiently compelling to justify the enactment of legislation which, without providing an alternative means of redress, totally abolishes an injured person's cause of action. The legislation impermissibly benefits only one class of defendants, at the expense of an injured party's right to sue, and in violation of our constitutional guarantee of access to courts."
Overland, supra, at 574.
We rule that the appellees have failed to show a substantial relationship between § 6-5-218 and the eradication of any social *Page 729 
evil sufficient to distinguish this case from Lankford.
Furthermore, this statute, like the products liability statute of repose, has no "savings clause" to provide parties injured near the expiration of the seven-year period with sufficient time to seek redress for their injuries. Under our ruling inLankford, the failure of such a statute to make some provision for those injured shortly before expiration of the limitations period makes the statute arbitrary on its face so that it cannot be upheld. Lankford, supra, at 1003-1004. See Tucker v.Nichols, 431 So.2d 1263 (Ala. 1983).
Because § 6-5-218 contains the same constitutional infirmities as the products liability statute struck down inLankford, we deem it unnecessary to discuss the appellant's additional contentions.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
[1] In Lankford we established two separate standards of review. One standard applied to the abolition of a "common law right"; the other to a "non-common law right." As in Lankford there is no need to reach the issue of which sort of right was involved here, since, under either standard of review, we would reach the same result.