The plaintiff, Mary Evelyn McFadden, appeals from a summary judgment granted in favor of the defendant, Ten-T Corporation, in her action to recover damages. We reverse and remand.
The Alabama State Highway Department awarded a contract to Ten-T Corporation as a general contractor to resurface and widen a portion of a state highway in Escambia County. The Highway Department furnished the plans and specifications for the project, which, by contract, Ten-T Corporation was required to follow in the construction. Specifications for the drainage of the highway were specifically included in the plans. The Highway Department provided an on-site representative to inspect every phase of construction.
Following completion of the construction in December 1983, and the recommendation of the supervising engineer, the Highway Department accepted the work on December 28, 1983, and assumed responsibility for the maintenance of the highway. On July 18, 1984, approximately seven and one-half months after completion of the construction, Mrs. McFadden had an automobile accident on this portion of the highway. She was on her way to work during a heavy rain. As Mrs. McFadden entered a curve, she hit a body of water in the middle of her lane, lost control of the car, collided with a tree, and suffered injuries, resulting in medical expenses in excess of $17,000.
Mrs. McFadden and her husband filed suit against Ten-T Corporation based on her injuries and his loss of consortium arising out of Ten-T Corporation's alleged negligence in the widening and resurfacing of the highway, which they claim created the hazardous condition that proximately caused Mrs. McFadden's accident.
The trial court granted Ten-T Corporation's motion for summary judgment, holding that, as a matter of law, the plaintiff was not entitled to recover against the defendant, based on the application of a decision of the Fifth Circuit Court of Appeals, E.I. duPont de Nemours Co. v. Kissinger,259 F.2d 411 (5th Cir. 1958). In that case, the Fifth Circuit Court of Appeals construed Alabama law to be that, if the owner has accepted an independent contractor's work, that contractor could not be held liable in negligence to an injured third *Page 193 
party. Mrs. McFadden appeals from the summary judgment granted in favor of Ten-T Corporation. Her husband did not join in this appeal.
This case presents squarely the question of whether this Court should accept the 30-year-old rule of the Fifth Circuit Court of Appeals in E.I. duPont de Nemours Co., supra, that a contractor is insulated from liability to third persons simply by virtue of the fact that the owner has accepted the contractor's completed construction prior to the plaintiff's accident. Or, in these circumstances, should liability extend to contractors where third persons are injured as a result of the contractor's negligent construction or repair?
A review of Alabama cases decided since E.I. duPont deNemours Co. reveals that, while some cases have been decided on the assumption that injured third parties have a cause of action against contractors for negligence, the issue of whether a contractor is immune from liability merely because the owner has accepted the contractor's work has never been directly presented to this Court. The plaintiff urges this Court not to adopt the rationale set forth in E.I. duPont de Nemours Co., but to apply the "imminently dangerous" exception to the general rule of nonliability. In the alternative, plaintiff urges this Court to expressly adopt the contemporary rule extending liability to contractors following acceptance of their work by the owner if the contractors' work was negligently done and it was foreseeable that third persons would be injured by that work.
The imminently dangerous exception to manufacturer's nonliability, which eliminated the requirement of privity for plaintiffs to recover, was first enunciated in MacPherson v.Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, 1053 (1916):
 "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. That is as far as we are required to go for the decision of this case. There must be knowledge of a danger, not merely possible, but probable. It is possible to use almost anything in a way that will make it dangerous if defective. That is not enough to charge the manufacturer with a duty independent of his contract. Whether a given thing is dangerous may be sometimes a question for the court and sometimes a question for the jury. There must also be knowledge that in the usual course of events the danger will be shared by others than the buyer. Such knowledge may often be inferred from the nature of the transaction. But it is possible that even knowledge of the danger and of the use will not always be enough. The proximity or remoteness of the relation is a factor to be considered. We are dealing now with the liability of the manufacturer of the finished product, who puts it on the market to be used without inspection by his customers. If he is negligent, where danger is to be foreseen, a liability will follow."
It is the exception to the general rule of nonliability with which the Fifth Circuit was concerned in E.I. duPont de Nemours Co. In that case, the plaintiff's injury allegedly resulted from the use of a 3/4 inch screw to attach a handle to a 250-pound warehouse door. The plaintiff was injured when he attempted to open the door and the handle fell off, causing him to suddenly fall backward with significant force. The warehouse in which the door was located had been constructed 13 years prior to the accident and was built by E.I. duPont de Nemours 
Company for the federal government, purportedly as a temporary structure, or five-year plant, during World War II. At the time of the plaintiff's injuries, the warehouse was a part of a group of buildings being rehabilitated by the federal government. Those hired to do that rehabilitative work had been cautioned extensively concerning the possible dangers *Page 194 
existing due to the age and deterioration of the project.
The plaintiff filed a negligence action against E.I. duPont de Nemours Company, and, following a trial, the jury returned a verdict in favor of the plaintiff. E.I. duPont de Nemours 
Company appealed the trial court's denial of its directed verdict. On appeal, the injured plaintiff urged the Fifth Circuit Court of Appeals to apply the imminently dangerous exception to the general rule of nonliability for contractors just as it had been applied in the case of manufactured goods. The Court of Appeals examined three Alabama cases involving negligent manufacturing and, under the facts of that case, concluded that the Alabama "rule thus developed respecting manufacturers of dangerous mechanisms should not be extended to building contractors." Additionally, the Court of Appeals held that the trial court erred in not directing a verdict for E.I. duPont de Nemours Company, because the evidence of negligence was insufficient to go to the jury.
Essentially two forms of the rule of contractor liability exist today. Some jurisdictions have adopted the general rule that a contractor has no liability to third persons following acceptance of the work by the owner unless one of the exceptions, such as the imminently dangerous exception, applies. See Reynolds v. Manley, 223 Ark. 314, 265 S.W.2d 714
(1954); Whiten v. Orr Construction Co., 109 Ga. App. 267,136 S.E.2d 136 (1964). Other jurisdictions apply the rule that a contractor is liable to third persons following acceptance of the work by the owner if the structure was negligently built and it was reasonably foreseeable that these third persons would be injured. See Johnson v. Equipment Specialists, Inc.,58 Ill. App.3d 133, 15 Ill. Dec. 491, 373 N.E.2d 837 (1978), and cases cited therein.
The development of the contemporary rule extending liability to contractors following acceptance of the work by the owner has paralleled the development of products liability law as explained by Justice Maddox in his dissent in Bagby Elevator Electric Co. v. McBride, 292 Ala. 191, 202, 291 So.2d 306, 316
(1974), set out in pertinent part below:
 "Historically, most courts, in passing upon the question of a building or contractor's negligence resulting in injury or damage to third persons after the completion of the work and acceptance thereof by the owner, start with the assumption of what has been considered to be the general rule, namely, that the contractor is not liable for such injuries to third persons, on the theory that no privity of contract exists between the contractor and such third persons, and that no duty is owed by the contractor in performing the contract other than to the contractee. There was no liability at common law. However, as in the case of manufacturers and sellers of chattels, a long list of exceptions to the general rule grew up in an attempt to lessen the harshness of the original nonliability rule. During the last decade or two, numerous courts have repudiated the rule and have brought an end to the differentiation between manufacturers of goods and building or construction contractors. See Annotation: Contractor-Liability to Third Person, 58 A.L.R.2d 8675. Therefore, liability of a contractor or architect for damages to third parties not in privity was nonexistent until less than twenty years ago. My research shows that Alabama has not considered the rule. . . . While I do not predict what Alabama would do, I assume that Alabama would probably follow the modern trend and impose liability on a contractor even after completion and acceptance of the work. I think the possibility of liability prompted the Legislature, probably at the urging of architects and contractors, to set limitations insofar as the maintenance of such an action is concerned."
(Emphasis added.)
The matter of contractor liability underlies this Court's decision in Bagby Elevator Electric Co., supra, in which we held that the last phrase (the seven-year provision) of Section 1 of Act No. 788, Acts of Alabama 1969, p. 1418, was violative of *Page 195 
Section 45 of the Alabama Constitution of 1901, because the Act "does not clearly express the subject of the Act; and the body of the Act in reality contains two subjects — one, a statute of limitations, and the other, a provision abolishing certain rights of action against architects and builders."292 Ala. at 198, 291 So.2d at 312. Act No. 788, as codified in Title 7, § 23(1), Code of 1940 (Recomp. 1958), provided as follows:
 "All actions against persons who performed or furnished the design, planning, supervision or construction of improvements on real property, whether based on contract or tort, for damages arising out of any act or omission of such persons in the design, planning, supervision or construction of such improvements, must be commenced within four years after the final completion of such improvements, and not afterwards. Provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than seven years after such act or omission."
The plaintiff in Bagby Elevator Electric Co. was a minor, age 10, who was injured on an elevator installed by the defendant in that case. From aught that appears in that opinion, the defendant did not argue that the child plaintiff had no cause of action against it under the rule of nonliability of contractors to injured third parties after the work has been accepted.
Later, in the case of Plant v. R.L. Reid, Inc., 294 Ala. 155,313 So.2d 518 (1975) ("Reid I"), a majority of this Court reaffirmed the holding in Bagby Elevator Electric Co. and further held that the remainder of the statute, absent the seven-year provision, was unconstitutionally vague as applied to tort actions, because, applying accepted rules of statutory construction, the Court could not determine what the legislature intended. The pertinent underlying facts in Plant
were set out in the opinion as follows:
 "On November 25, 1972, Tramble Plant, while working as an employee of the Alabama State Docks, was killed when his hands became caught between the drum or pulley and a conveyor belt, causing him to be pulled into the conveyor system. Prior to this occurrence the conveyor system had been altered in accordance with plans and specifications prepared by the defendant, R.L. Reid, Inc. Plant's surviving widow filed an action under the provisions of Title 26, § 312, Code of Alabama 1940, Recompiled 1958, against R.L. Reid, Inc., alleging that her husband's death was caused by Reid's negligence in designing the equipment."
294 Ala. at 157, 313 So.2d at 519. Having struck down Title 7, § 23(1), supra, this Court reversed the judgment for the defendant in Plant and held that the statute of limitations applicable to the plaintiff's cause of action was the limitations period contained in Title 7, § 123, the wrongful death statute. The case was remanded for a trial.
On remand, the case was tried on the plaintiff's amended complaint alleging that the defendant, R.L. Reid, Inc., a firm of consulting engineers, which had contracted with the Alabama State Docks to provide "general engineering work and preparation of plans and specifications [for], and supervision of construction" of alterations to the loading facilities at the bulk-handling plant at the Alabama State Docks at Mobile, did in fact prepare such plans and specifications for modification of the conveying system in place at the State Docks. The complaint further alleged that modifications were subsequently made to the conveying system in accordance with the plans and specifications provided by the defendant, and that the defendant was negligent in failing to specify in its plans that a guard or shield be placed at the point on the conveyor system where the plaintiff's decedent was pulled into the system, causing his death. The jury returned a verdict for the plaintiff awarding her $350,000. Judgment was entered for the plaintiff in that *Page 196 
amount and the defendant's pre-judgment and post-judgment motions were denied.
On appeal by the defendant, a majority of this Court reversed the judgment below and remanded the case for a new trial.R.L. Reid, Inc. v. Plant, 350 So.2d 1022 (Ala. 1977) ("ReidII"). The rationale of the majority's decision was set out in the opinion as follows:
 "The evidence is uncontradicted, however, that the plans and specifications prepared by Reid were not followed by the State Docks. The theory of the plaintiff's case is that Reid was negligent in failing to provide for a guard to shield the nip point of the head pulley, the point at which Mr. Plant met his death. However, it is again uncontradicted that had the State Docks followed the plans and specifications as prepared by Reid no guard would have been necessary at this point, because the belt feeder would not have been accessible to workmen. It is also uncontradicted that, at the time of Mr. Plant's death, the State Docks had long since converted the facility and no longer purported to employ the Reid modifications.
 "The plaintiffs position is that Reid owed a duty to third persons in the performance of its contract with the State Docks, and it breached that duty to plaintiff by failing to include a guard in the plans and specifications submitted to the State Docks. The plaintiff concedes that the contract did not call for any safety features. However, she relies on testimony from an engineer employed by the State Docks to the effect that safety is always a factor in drawing any plans and specifications. She did not come forward with any testimony that safety guards of the type she says should have been recommended by Reid were commonly recommended by engineers on such projects in 1964. Her only evidence on this crucial point consisted of testimony by an engineer who could testify to no more than his opinion that guards should have been included in this project in 1964. This witness, a 1969 graduate, was not a member of the profession at the time and never testified to the state of the art in the engineering field in 1964. At most, he simply expressed an opinion that guards should have been recommended, without saying that such was an established practice in 1964.
 ". . . However, had the plans and specifications recommended by Reid been adopted by the State Docks, the nip point of the head pulley would not have been accessible to humans and, therefore, a guard would not have been required to meet the standards of the profession as they existed in 1964. An engineer may not be held liable for injuries which could not have occurred had his modifications been adopted. Bayne v. Everham, 197 Mich. 181, 163 N.W. 1002 (1917). . . .
 "We might agree with the plaintiff that guards should have been specified had Reid not recommended moving the belt feeder so as to make it inaccessible to humans which, according to the evidence, would have met the professional standards existing in 1964.
 "The plaintiff has failed to establish by the evidence that Reid breached any duty to the decedent by failing to specify the installation of a guard at the point where Mr. Plant met his death. The plaintiff has this burden under our practice and having failed to establish this element of her claim, the defendant was entitled to a new trial."
(Emphasis added.) 350 So.2d 1025-27.
Significantly, in Reid II, as in Bagby Elevator ElectricCo., supra, neither the defendant, amici curiae, nor this Court questioned whether the defendant owed a duty to third parties not to perform their work negligently, notwithstanding the fact that the work had been accepted by the Alabama State Docks, with whom the defendant had contracted. Indeed, Title 7, § 23(1), was enacted, and Bagby Elevator Electric Co. and bothReid I and Reid II were written, with the assumption thata cause of action in tort existed in favor of injured third parties against "persons who performed or furnished the design, planning, supervision or construction of improvements on real property . . . for damages *Page 197 
arising out of any action or omission of such persons in the design, planning, supervision or construction of such improvements." Title 7, § 23(1), supra.
In the process of drafting the Code of 1975, § 23(1) from the 1940 Code was "rewritten in accordance with the cases of BagbyElevator Electric Co. and [Reid I]." Code of 1975, Legislative Manuscript, Vol. 7, Appendix I, p. A-39. The rewritten version is codified at Code of 1975, § 6-5-218, set out below:
 "(a) No action in tort, contract or otherwise shall be commenced against any person performing or furnishing the design, planning, supervision or observation of construction or the construction of an improvement to real property more than seven years after the substantial completion of such improvement for the recovery of damages for:
 "(1) Any deficiency in the design, planning, supervision or observation of construction or construction of such an improvement; or
 "(2) Injury to real or personal property caused by any such deficiency; or
 "(3) Injury to or wrongful death of a person caused by any such deficiency.
 "(b) The prohibition provided in this section shall apply to any action commenced against a person for his own act, or failure to act, or for the act, or failure to act, of his employees; likewise, the prohibition contained in this section shall extend to every demand, whether commenced by direct action or for contribution or indemnity or by third-party practice and whether commenced by an owner of the subject improvement or by any other person.
 "(c) Where an action for damage for wrongful death or injury to a person or damages to property, caused by any deficiency in an improvement to real property, is commenced against a person in actual possession or control as owner, tenant or otherwise of such improvement, the prohibition prescribed by this section shall not be a defense for such person.
 "(d) This section shall not be construed to extend any applicable statute of limitations or time for commencing civil actions against any person performing or furnishing the design, planning, supervision or observation of construction or the construction of an improvement to real property.
 "(e) As used in this section, the word 'person' shall mean an individual, partnership, corporation, association or any other legal entity."
(Emphasis added.) It is important to note that § 6-5-218(b) expressly contemplates not only actions by "owner[s] of the subject improvement[s]," but also actions "by any other person," which is significant because it is further indication of a recognition by the legislature that liability of the persons protected by the statute of repose of § 6-5-218(a) may extend to those not in privity with such persons.
In Jackson v. Mannesmann Demag Corp., 435 So.2d 725
(Ala. 1983), decided eight years after the statute was rewritten, this Court was called upon to decide the constitutionality of § 6-5-218(a). Four different constitutional challenges were advanced; however, this Court found dispositive the first, which was that the statute violates Article 1, § 13, of the Alabama Constitution, known as the "open court" provision. The plaintiff in Jackson was injured by an electric arc furnace at the Autlan Manganese Corporation plant near Theodore, Alabama. He filed an action against Mannesmann Demag Corporation and McDowell-Wellman Engineering Corporation, asserting claims based on the Alabama Extended Manufacturer's Liability Doctrine and on negligence. The trial court ruled that the action was barred by the seven-year statute of repose contained in § 6-5-218 and entered summary judgment in favor of the defendants.
Before undertaking to analyze the § 13 issue, this Court explained the legislative history of § 6-5-218, which we reiterate below:
 "Buildings, bridges, and other improvements to real property often have long life expectancies. Since the statute *Page 198 
of limitations for negligence runs from the date of the plaintiff's injury, not from the date of the act causing the injury, the potentially long interval between the time architects, contractors, or other members of the construction industry commit an allegedly negligent act or omission and the time of the resulting injury results in exposure to liability of people in the construction industry long after the improvement in question has been completed. In an attempt to limit that exposure, the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors of America lobbied for enactment of statutes limiting the period subsequent to the construction of a given improvement during which an action might be brought for injuries allegedly caused by architects or other construction personnel. As a result of their lobbying efforts, numerous states passed statutes associating the accrual of a cause of action with the conclusion of construction rather than with the resulting injury to the plaintiff. See Rogers, The Constitutionality of Alabama's Statute of Limitations For Construction Litigation: The Legislature Tries Again, 11 Cum.L.Rev. 1 (1980); Comment, Limitation of Action Statutes for Architects and Builders — Blueprints for Non-action, 18 Cath.U.L.Rev. 361 (1969).
 "In 1969 the Alabama legislature adopted a statute designed to protect architects and builders. Act No. 788, Acts of Alabama, 1969 — Title 7, § 23(1), Ala. Code (Supp. 1973). The statute required that all actions based on the construction of improvements on real estate be commenced within four years of the final completion of the improvement or within six months of the time the cause of action was discovered or should have been discovered, but in no event later than seven years after the act or omission complained of. In Bagby Elevator and Electric Co. v. McBride, 292 Ala. 191, 291 So.2d 306 (1974), we recognized that the statute was not a traditional statute of limitations regulating the time during which an action could be brought; it was a substantive limitation that actually prevented a cause of action from accruing or vesting in cases where the injury occurred more than seven years after the act or omission causing the injury. We struck down the seven-year limitation as violative of the Alabama constitutional requirement that a bill's title clearly express its subject and that its body contain only one subject. Ala. Const. Art. IV § 45. In a subsequent decision, Plant v. R.L. Reid, Inc., 294 Ala. 155, 313 So.2d 518 (1975), we ruled that the remainder of the statute was too vague to enforce.
 "In 1969 the legislature authorized the governor to appoint a code commissioner to recodify the statutes of Alabama, a task assigned by the State to the Michie Company. Rather than omitting § 23(1), which had by that time been ruled unconstitutional, § 6-5-218 was added. The new section was derived from old § 23(1) and was rewritten in an attempt to cure the defects which caused the statute to be struck down in Bagby Elevator and Plant. The new code containing the statute in question was adopted by the legislature in February, 1977. Act No. 20, Acts of Ala., 1977. [The information regarding the recodification process was taken from Comment, 1975 — A Code Odyssey: A Critical Analysis of The Alabama Recodification Process, 10 Cum.L.Rev. 119 (1979).]"
435 So.2d at 726-27. In holding that § 6-5-218 violated the open court provision of the Alabama Constitution, this Court analogized this statute to the Alabama products liability statute of repose, which, in Lankford v. Sullivan, Long Hagerty, 416 So.2d 996 (Ala. 1982), this Court had held violated § 13. In the process of that analysis, we recognized the obvious similarities between claims against manufacturers of products, especially products with long useful lives, and claims against those who perform or furnish "the design, planning, supervision or observation of construction or the construction of an improvement to real property" (§ 6-5-218): *Page 199 
 "Appellees . . . point to three grounds which, they argue, support their contention that § 6-5-218, unlike the products liability statute, was a legitimate exercise of the state's police power in an attempt to eradicate a perceived social evil. See Lankford, supra, at 1001-1003. First, they argue that buildings and other structures have a relatively long life span vis-a-vis manufactured products. Therefore, they argue, the statute was a reasonable attempt to limit what might otherwise amount to an exposure to liability for an unlimited period of time.
 "We are of the opinion that the comparatively longer useful life of a building or other improvement militates against, rather than in favor of, the conclusion advocated by the defendants. In Lankford we pointed to the long life expectancy of certain types of products as indicative of the inherent unfairness of a statute which arbitrarily limits the rights of injured parties irrespective of the useful life of the products. Lankford, supra, at 1002-1003. As Chief Justice Torbert stated in his concurring opinion in Lankford, 'A manufacturer should be required to produce a product that can be safely used during the period of its intended use, not for some arbitrary period of time that is applied to all products,' 416 So.2d at 1006, quoting Comment, Alabama's Products Liability Statute of Repose, 11 Cum.L.Rev. 163, 180 (1980). That rationale applies a fortiori to the case at bar.
 "Next, the defendants argue that 'the longer the period of time between the completion of the structure and the injury, the greater the opportunities for some intervening negligence to occur.' The defendants' argument fails to take into account the requirement of the plaintiff to prove that his injuries were the proximate result of the defendants' negligence. If the injury in question was the result of the intervening negligence of the owner or some other third party, the plaintiff would not, of course, be entitled to recover against the builder. The problem with the defendants' argument is that latent defects in a building caused by the builder may not produce injuries until the seven year period has elapsed. The fact that an injured plaintiff would still have a cause of action against the owner of the building is not sufficient to justify insulating the builder from all liability. If the plaintiff proves that his injuries were the proximate result of the builder's negligence, recovery should be had against the builder.
 "Finally, the appellees argue that § 6-5-218
protects against the defendant's having to mount a defense with 'stale evidence.' In Overland Construction Co. v. Sirmons, 369 So.2d 572 (Fla. 1979), the Supreme Court of Florida, in striking down a similar statute as offensive to that state's 'open court' provision in its constitution, replied to a similar argument:
 " 'We recognize the problems which inhere in exposing builders and related professionals to potential liability for an indefinite period of time after an improvement to real property has been completed. Undoubtedly, the passage of time does aggravate the difficulty of producing reliable evidence, and it is likely that advances in technology tend to push industry standards inexorably higher. The impact of these problems, however, is felt by all litigants. Moreover, the difficulties of proof would seem to fall at least as heavily on injured plaintiffs, who must generally carry the initial burden of establishing that the defendant was negligent. In any event, these problems are not unique to the construction industry, and they are not sufficiently compelling to justify the enactment of legislation which, without providing an alternative means of redress, totally abolishes an injured person's cause of action.
The legislation impermissibly benefits only one class of defendants, at the expense of an injured party's right to sue, and in violation of our constitutional guarantee of access to courts.'
"Overland, supra, at 574." *Page 200 
435 So.2d at 727-28. In a footnote to our opinion inJackson, supra, this Court observed the following:
 "1. In Lankford we established two separate standards of review. One standard applied to the abolition of a 'common law right'; the other to a 'non-common law right.' As in Lankford there is no need to reach the issue of which sort of right was involved here, since, under either standard of review, we would reach the same result."
435 So.2d at 728. The relevance of this observation, as well as the other language from the opinion quoted and emphasized above, is in the recognition itself of the right of action at issue in that case, which is also at issue in the present case. Of further significance is that, in line with other jurisdictions, this Court has recognized the similarity between manufacturer's liability and contractor's liability. SeeCasrell v. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976);Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976). While we do not propose to adopt the same standards for contractor's liability as have been adopted for manufacturer's liability, we do recognize that the purpose that supports manufacturer's liability is the same as that that supports contractor's liability: a defendant will not be relieved from liability merely on the basis of lack of privity, when, as a result of his negligence, third persons are injured. Although very little practical difference exists in the application of the rules, this Court expressly follows the majority of jurisdictions that have adopted the rule extending liability to contractors following acceptance of their work by the owner where a third party is injured by the contractor's negligence.
We agree with the reasoning of the Illinois Supreme Court inHunt v. Blasius, 74 Ill.2d 203, 23 Ill.Dec. 574, 384 N.E.2d 368
(1979), in setting forth the requirements of contractor's liability and the proximate cause issue relating to a contractor's compliance with the owner's plans and specifications:
 "The general rule of nonliability having been discarded, we must examine the negligence count according to the traditional requirements of such an action. Liability in negligence arises only if the independent contractor has breached a duty owed to persons whose injuries proximately resulted from the breach. In the case at bar, Fosco designed, constructed and installed the exit sign post upon specifications provided by the State of Illinois. It is conceded that Fosco fully complied with the specifications. Plaintiffs, nevertheless, allege that Fosco owed a duty to plaintiffs 'to utilize its judgment in the exercise of reasonable care in the construction, design and installation of said exit sign pole.' We disagree.
 "An independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them. (Restatement (Second) of Torts sec. 404, Comment a (1965); Prosser, Torts sec. 104, at 681-82 (4th ed. 1971); 41 Am.Jur.2d Independent Contractors
sec. 50 (1968).) The rule, as expressed in the oft-cited case of Ryan v. Feeney Sheehan Building Co. (1924), 239 N.Y. 43, 46, 145 N.E. 321, 321-22, is as follows:
 " 'A builder or contractor is justified in relying upon the plans and specifications which he has contracted to follow, unless they are so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury.' (Cited with approval in Leininger v. Stearns-Roger Manufacturing Co. (1965), 17 Utah 2d 37, 41-42, 404 P.2d 33, 36; Davis v. Henderlong Lumber Co. (N.D.Ind. 1963),221 F. Supp. 129, 134; Person v. Cauldwell-Wingate Co.
(2d Cir. 1951), 187 F.2d 832, 835, cert. denied
(1951), 341 U.S. 936, 95 L.Ed. 1364, 71 S.Ct. 855.)" *Page 201 
384 N.E.2d at 371. We also agree with the New Jersey Supreme Court in Totten v. Gruzen, 52 N.J. 202, 245 A.2d 1 (1968), that the issue of liability does not depend on whether the defect is latent or patent:
 "In any event, the dichotomy [of latent-patent defects] appears to rest on the notion that if the design or workmanship is so obviously bad and dangerous, the owner would or should do something promptly to correct it and, if he does not, liability for injury rests with him alone. The idea is somewhat strange and illogical in thus terminating the possibility of liability of the party basically at fault. Perhaps it would be sounder to say that the subsequent inaction of the owner simply adds him as another possible tortfeasor.
 "We believe it sounder not to find the patent-latent distinction to be a hard and fast rule, but to treat it as suggested in Schipper [v. Levitt Sons, Inc.], supra (44 N.J. [70] at pp. 81, 84, 87, 207 A.2d 314), i.e., the obviousness of a danger does not necessarily preclude a jury finding of unreasonable risk and negligence; however, it will so preclude if the obviousness to the claimant justifies the conclusion that the condition is not unreasonably dangerous; otherwise it is simply a factor to consider on the issue of negligence of the contractor."
245 A.2d at 6.
In expressly recognizing this rule of liability for contractors following acceptance of their work by the owner, we are compelled to distinguish our previous holdings in cases involving the sale of new and used homes. This Court first held in Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971), that a builder-vendor would be liable on a theory of implied warranty in the sale of a new home, thus eliminating the rule of caveat emptor in new home sales. As this Court noted then: "Considerable comment has been made by legal scholars about the new trend toward judicial abolition of the doctrine of caveat emptor in real estate sales. Most scholars question the retention of the rule in view of current day conditions."287 Ala. at 440, 252 So.2d at 31415. While the rule of caveat emptor is still a valid defense in an action based on the sale
of a used home, this rule has no applicability to a theory of liability based on personal injury caused by negligentconstruction, whether in regard to new homes or used homes. Thus, in an action based on the sale of a new home, the injured party may have more than one theory of recovery available to him; however, if he states a claim based on negligent construction, the injured party must meet the burden of proof attendant to contractor's liability.
In light of the foregoing, the judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON, SHORES and ADAMS, JJ., concur.