In December 1986, the plaintiff, Timothy Mac Aldridge, was injured at work when an electrical control panel exploded at the Copeland Corporation plant in Hartselle, Alabama. The electrical control panel was part of a gun drill system installed at the Copeland plant by Valley Steel Construction, Inc. ("Valley"), in 1980. Aldridge brought this action pursuant to Ala. Code 1975, § 25-5-11, alleging, among other things, that Valley had negligently installed the gun drill machine and that its negligence was the proximate cause of Aldridge's injuries. In other words, Aldridge contends that Valley should have foreseen that the level of fluids would be high enough to make contact with and infiltrate the electrical components of the pump motor and that Valley was under a duty to place the pump motor at a higher elevation or to provide some sort of protective devices to guard against this danger.
Valley moved for a summary judgment, contending (a) that it did nothing but install *Page 983 
the equipment in strict compliance with the plans and specifications that were supplied to it; and (b) that assuming, without deciding, that the initial installation had been negligent or improper, the unguarded motor that was allegedly the cause of the accident was not installed or wired by Valley or its subcontractor and, therefore, Valley's work could not have been the proximate cause of Aldridge's injuries.
The trial court entered a summary judgment in favor of Valley, and Aldridge appeals. The dispositive issue before this Court is whether Valley was entitled to a summary judgment as a matter of law.
A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Southern Guar. Ins. Co. v. First Alabama Bank,540 So.2d 732, 734 (Ala. 1989). The burden is, therefore, upon the moving party to clearly show that there is no material fact in dispute, and all reasonable inferences from the evidence are to be viewed most favorably to the nonmovant. Southern Guar. Ins.Co., supra, at 734.
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-2112, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
The undisputed facts reveal that the control panel box was a component part of a gun drill machine system installed by Valley Steel Construction, Inc., in 1980. The gun drill, a complex piece of industrial equipment, was used by Copeland in connection with the manufacture of crankshafts for heat pumps. Included in the overall system was a "self-contained pit . . . approximately thirteen feet by four or five feet by eighteen inches deep, containing the pumps, filters, [and an electric] motor." The used cutting fluid or coolant would collect in an enclosure within the pit. After being filtered to remove any metal chips, the coolant was recycled to the drill bit by use of a high pressure pump. The pump was powered by an electric motor, which was placed in the concrete pit 18 inches below floor level on the outside of the enclosure.
Valley was given drawings, plans, and specifications to be followed concerning the installation of the system. The motor was installed in the exact location called for in the plans and specifications. Valley engaged Hammon Electric Company, Inc., to bring power to the electric pump motor and to connect the power to the equipment. The wiring was done in compliance with the plans and specifications. Valley performed its work according to the plans and specifications provided by Copeland and finished its work sometime near the end of 1980 or the early part of 1981, at which time the work was accepted by Copeland.
After the initial installation, the original electric motor was replaced with a larger motor. The original 20-horsepower motor and high pressure pump that had been installed by Valley were removed by the Copeland Corporation in July or August 1986 and were replaced by Copeland with a new 40-horsepower motor and new high pressure pump. There was also a change in the original wiring from the electrical panel box to the terminal box on the new 40-horsepower motor. However, the location of the electric pump motor remained the same, and the control panel box was not replaced or altered.
In opposition to Valley's motion for summary judgment, Aldridge presented evidence that the explosion was caused by coolant getting into the motor. The affidavit testimony of Dr. Jeffery Warren,[1] a *Page 984 
mechanical engineer experienced in the design and installation of gun drill systems, was properly admitted into evidence. Dr. Warren stated:
 "The motor, as installed in the pit by Valley Steel Construction and wired by Hammon Electric, was not suitably enclosed to protect the motor from contact with liquids which would collect in the pit. The installation was done in a manner which was in direct violation of the National Electric Code, Section 430-11. There was failure to satisfy the specification in the purchase order that all applicable regulations as to 'all external machine connections and power wiring' be complied with. It is my professional opinion that, if the motor had been installed in accordance with the National Electric Code, this accident would have been avoided.
 "Based on my education, experience, and to-date investigation of this accident, I believe that the gun drilling machine as installed by Valley Steel Construction and Hammon Electric Company was defective and unreasonably dangerous and failed to meet the applicable provisions of the National Electric Code. I further believe that the defective nature of the system — placing the motor low in the pit so that it would be exposed to liquids — and the violation of the National Electric Code's requirement that certain precautions be taken when there may be exposure to liquids would be apparent to an ordinary and prudent contractor who was engaged to install this system. A reasonable contractor would notice that the prescribed placement of the motor in this pit created a dangerous situation which might result in an injury-causing accident."
The mechanical engineer also stated that any "[c]hanges in the type or horsepower of the motor or any rewiring of the pump to the electrical panel box would not affect [his] opinion that Valley Steel Construction . . . should have noticed the dangerous condition created by the particular placement of the motor and failed to comply with Section 430-11 [of the safety code]."
The law in Alabama concerning liability of contractors following acceptance of their work by the owner was set out inMcFadden v. Ten-T Corp., 529 So.2d 192, 200 (Ala. 1988) (quoting from Hunt v. Blasius, 74 Ill.2d 203, 23 Ill. Dec. 574, 577, 384 N.E.2d 368, 371 (1978):
 " 'An independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them.' "
Pursuant to McFadden, this Court has adopted the view that an independent contractor is not free to comply with obviously defective plans and specifications that the contractor should know may create unreasonably dangerous conditions. Rather, a contractor is expected to act reasonably under the particular circumstances in order to avoid accidents. However, this Court has not had the opportunity to explore the contours of the liability of such a contractor who discovers, or should have discovered, an apparent defect in the plans and specifications, or the effect a subsequent change or modification would have on the contractor.
Viewing the evidence most favorably to Aldridge, we conclude that Valley failed to clearly show that there was no material fact in dispute. The question remains whether Valley acted reasonably or prudently when it installed the gun drill machine as indicated on the plans and specifications. *Page 985 
Specifically, was there a defect in the plans and, if so, should Valley have discovered it? Additionally, we find a jury question as to whether any subsequent change or modification to the motor would relieve Valley of any liability it otherwise would have.
The judgment of the trial court is due to be reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS and KENNEDY, JJ., concur.
[1] In support of the trial court's summary judgment, Valley contends that the mechanical engineer's affidavit proffered by Aldridge was not admissible, because Valley says that it did not satisfy Rule 56(e), A.R.Civ.P. Aldridge contends that this issue is not before this Court because Valley did not file a cross-appeal. However, Valley may offer in support of its judgment any argument supported by the record, whether that argument was ignored by the circuit court or rejected.McMillan, Ltd. v. Warrior Drilling Engineering Co.,512 So.2d 14 (Ala. 1986). Here, Valley properly objected to the affidavit, and the trial court denied the objection. Therefore, Valley is not required to cross-appeal. Nevertheless, we cannot say that the trial court erred in admitting the affidavit.