636 So.2d 353 (1993)
Jimmy D. PHIPPS and Nationwide Insurance Company
v.
IRBY CONSTRUCTION COMPANY & Bowman and Bowman, Incorporated.
No. 89-CA-0174.
Supreme Court of Mississippi.
September 16, 1993.
Rehearing Denied May 26, 1994.
*354 Joseph E. Roberts, Jr., Crymes G. Pittman, Pittman Germay Roberts & Welsh, Jackson, Eugene M. Harlow, Romney H. Entrekin, Gibbes Graves Mullins Bullock & Ferris, Laurel, Eugene C. Tullos, Tullos & Tullos, Raleigh, for appellants.
Larry D. Moffett, John B. Clark, Robert J. Arnold III, Daniel Coker, Horton & Bell, Randolph C. Wood, Jackson, S. Wayne Easterling, Easterling & Varnado, Hattiesburg, for appellees.
EN BANC.
HAWKINS, Chief Justice, for the court:
Jimmy D. Phipps and his workers' compensation carrier, Nationwide Insurance Company (Nationwide), appeal from a summary judgment dismissal of their complaint against Irby Construction Company (Irby) and Bowman and Bowman, Incorporated (Bowman), industrial design engineers, for defective design and installation of a second phase to a power line for Southern Pine Electric Power Association in 1948, and on which Phipps was injured in 1982. The defendants pled Miss. Code Ann. § 15-1-41. We affirm.

FACTS
In 1947 Southern Pine contracted with Irby and Bowman to add a second phase to its power lines in Copiah County, involving construction or reconstruction of 130 miles of electric distribution lines, which was completed in February, 1948. On July 31, 1982, while employed by Southern Pine and working on the line, Phipps received serious personal injuries. On September 8, 1986, a complaint was filed against Irby and Bowman in the circuit court of Copiah County. The defendants' answer pled Miss. Code Ann. § 15-1-41 as a bar; and, upon the above facts being developed by affidavit, the court by summary judgment dismissed the action.

LAW
On their appeal Phipps and Nationwide contend the statute does not bar them for two reasons: the second phase to the power line was not an "improvement to real property," and, if it were, the statute is unconstitutional because it violates the equal protection clause of the Fourteenth Amendment. For the reasons stated, we do not agree.

I. IMPROVEMENT TO REAL PROPERTY
Smith v. Fluor Corp., 514 So.2d 1227 (Miss. 1987), is dispositive. There we held that an addition of machinery to an oil refinery was an improvement to real property under the statute. This is in accord with the great weight of authority. See, e.g., Adair v. Koppers Co., Inc., 541 F. Supp. 1120 (N.D.Ohio 1982) (coal-handling conveyor was improvement); Keeler v. Commonwealth, Dept. of Transportation, 56 Pa.Cmwlth. 236, 424 A.2d 614 (1981) (guardrails, signs and lights on highway are improvements); McClanahan v. American Gilsonite Co., 494 F. Supp. 1334 (D.C.Colo. 1980) (surge tank in oil refinery an "improvement to real property"); Pacific Indemnity Co. v. Thompson-Yaeger, Inc., 260 N.W.2d 548 (Minn. 1977) (furnace installed in store an "improvement"); Reeves v. Ille Electric Co., 170 Mont. 104, 551 P.2d 647 (1976) (whirlpool bath in field house was improvement); Cherokee Carpet Mills, Inc. v. Manly Jail Works, Inc., 257 Ark. 1041, 521 S.W.2d 528 (1975) (storage tank in carpet plant an improvement).

II. CONSTITUTIONALITY OF ACT
By ch. 397, Laws 1966, § 720.5 Code of 1942, the Legislature first enacted a statute *355 limiting the time within which an action could be brought to recover damages for injuries received from the design or construction of an "improvement to real property."[1]
This was brought forward in the 1972 Code.
By ch. 350, Laws of 1972, the Legislature amended the statute to read as follows:
No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, ... against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than ten (10) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.

This limitation shall not apply to any person, firm or corporation in actual possession and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement causes injury.
This limitation shall not apply to actions for wrongful death.
The provisions of this section shall apply to causes of action accruing prior to June 1, 1972, but shall not revive any cause of action barred under existing law as of that date.
Miss. Code Ann. § 15-1-41 (1972) (emphasis added).
This statute was in effect July 31, 1982, when Phipps was injured.[2]
Two amendments were effected by the 1972 Act: "patent deficiency" was amended to "any deficiency," and actions for wrongful death were removed from the bar by the following sentence: "This limitation shall not apply to actions for wrongful death."
Phipps and Nationwide argue that removing wrongful death actions from the bar treats such cases so differently from this action as to deny Phipps the equal protection of laws guaranteed by the Fourteenth Amendment to the United States Constitution: "[N]or shall any State ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.
Statutes of limitations by their very nature are arbitrary. In Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628, (1945), the U.S. Supreme Court noted:
Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts *356 from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.
Chase, 325 U.S. at 314, 65 S.Ct. at 1142, 89 L.Ed. at 1635-36 (footnote omitted).
Phipps' contention must fail for two reasons: our previous holding to the contrary and separability of the statute. In Fluor Corp. v. Cook, 551 So.2d 897 (Miss. 1989), Fluor Corporation was sued for negligent construction of a refinery by the wrongful death beneficiaries. It claimed Miss. Code Ann. § 15-1-41 violated the equal protection clause because it did not apply to wrongful death actions, but applied to all other actions for damages caused by negligent construction. We rejected the argument. Id., 551 So.2d at 900.[3]
Over and beyond this, wrongful death beneficiaries are one class of claimants, separate and apart from Phipps' class, and even if we found merit in his argument, it must fail because of the separability of the act. The removal of wrongful death beneficiaries from the bar has no adverse effect on those in Phipps' class. He is not harmed by their removal from the bar. See, e.g., Quinn v. Branning, 404 So.2d 1018 (Miss. 1981); Tatro v. State, 372 So.2d 283 (Miss. 1979) (Sugg, J., dissenting); Lovorn v. Hathorn, 365 So.2d 947 (Miss. 1978), cert. denied, 441 U.S. 946, 99 S.Ct. 2167, 60 L.Ed.2d 1049 (1979); O'Neal v. Simpson, 350 So.2d 998 (Miss. 1977), cert. denied, 435 U.S. 934, 98 S.Ct. 1510, 55 L.Ed.2d 532 (1978); Wilson v. Jones County Bd. of Supervisors, 342 So.2d 1293 (Miss. 1977); Howell v. State, 300 So.2d 774 (Miss. 1974); American Express Co. v. Beer, 107 Miss. 528, 65 So. 575 (1914); Adams v. Standard Oil Co., 97 Miss. 879, 53 So. 692 (1910); Campbell v. Mississippi Union Bank, 7 Miss. 625 (1842). See also, 82 C.J.S. Statutes § 92-93 (1953). The judgment of the circuit court is therefore affirmed.
AFFIRMED.
DAN M. LEE and PRATHER, P.JJ., and JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
BANKS, J., dissents with separate written opinion joined by PITTMAN and McRAE, JJ.
SULLIVAN concurs in result.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, J.
BANKS, J., concurs in parts II and V.
BANKS, Justice, dissenting:
Because I believe that this statute of repose offends the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, I must dissent from the holding of the majority. I also agree with Justice McRae when he writes that the structure here in issue is not an improvement within the meaning of the statute for the reasons stated in his opinion. Because Phipps makes no claim based on Section 24 of the Mississippi Constitution and out of deference to stare decisis, the issue with respect this particular statute having *357 been decided in Anderson v. Wagner, 402 So.2d 320 (Miss. 1981), I hold for another day my views as to the proper treatment of claims that legislative enactments offend the "open courts" provision of our constitution.

I
Our statute of repose for actions against architects, engineers and builders arising out of defects in design or construction of improvements to real property provides as follows:
§ 15-1-41. Limitations applicable to actions arising from deficiencies in constructions, or improvements to real property.
No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, and no action may be brought for contribution or indemnity for damages sustained on account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.
This limitation shall not apply to any person, firm or corporation in actual possession and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement causes injury.
The provisions of this section shall only apply to causes of action accruing from and after January 1, 1986; and any cause of action accruing prior to January 1, 1986, shall be governed by Chapter 350, Laws of 1972.
Miss. Code Ann. § 15-1-41 (Supp. 1992). Chapter 350, Laws of 1972 referred to above was exactly the same as the current provision, except that it provided a ten (10) year period and the final paragraph referred to actions accruing prior to 1972, the year of enactment, rather than 1986, the effective date of the statute now in effect. Miss. Code Ann. § 15-1-41 (Supp. 1992), Editor's note. The original version of this statute was enacted in 1966 and referred only to "patent" deficiencies and applied to actions for wrongful death as well as personal or property injury. Chapter 397, Laws of 1966. The 1972 reenactment modified the statute to refer to "any deficiency" and added the wrongful death exception. Chapter 350, Laws of 1972. See also, DeVille Furniture Co. v. Jesco, Inc., 423 So.2d 1337, 1339-1341 (Miss. 1982) for a discussion of the historical setting of the enactment of this statute.
As interpreted by this court, this statute applies to actions by owners against architects, builders and sub-contractors. DeVille Furniture Co. v. Jesco Inc., 423 So.2d at 1341-1342. It applies to actions by third parties against those involved in design and construction but it does not apply to actions by third parties against owners in possession. West End Corp. v. Royals, 450 So.2d 420, 424 (Miss. 1984).
This Court has spoken to a number of suggestions that this statute is unconstitutional under either the federal or our state's constitution. In Anderson, the plaintiffs grounded their attack on Art. 3, § 24 and Art. 4, § 87 of the Mississippi Constitution. Section 24 provides that:
All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial or delay.
Section 87 prescribes special laws for individuals or corporations in cases which can be provided for by general law or handled by the courts.
The Anderson court cited with approval cases from other jurisdictions finding a rational basis for similar statutes and terming them a legitimate exercise of legislative power. 402 So.2d at 322-324. The court found that the distinction between owners on the one hand and builders and architects on the other is valid and not arbitrary or capricious. *358 Id. at 324. It concluded that the class of persons covered by the statute is sufficiently large, that the statute is general, and not specific in violation of § 87 of our state constitution. Id. Citing Walters v. Blackledge, 220 Miss. 485, 518, 71 So.2d 433, 446 (1954), as having ceded to the legislature the power to change or abolish common-law remedies for torts yet to happen, the court implicitly found no violation of § 24. Id.[1]
In Reich v. Jesco, Inc., 526 So.2d 550, 553 (Miss. 1988), this Court decided the issue whether § 15-1-41 violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States by excluding owners and material suppliers from the limitation. We noted and rejected decisions by other states accepting the argument that the statute was constitutionally flawed in that regard. Id. In the absence of a clear expression from the Supreme Court of the United States, this Court opted to adhere to its holding in Anderson that the distinction between owners and those in the planning and building process has a rational basis and concluded that the distinction passes muster for federal equal protection purposes. Id. at 554.
Finally, in Fluor Corp. v. Cook, 551 So.2d 897 (Miss. 1989), we considered the issue whether the exclusion of wrongful death actions from the limitation is "unconstitutional". The opinion does not reveal the particular constitutional attack there considered. Id. Fluor Corporation argued both § 90(s) of the Mississippi Constitution and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Appellant's Brief, Case No. 58,656, at pp. 6-10. Fluor Corporation's objective, of course, was to jettison the wrongful death exception and keep the rest, for without the statute it would have had no limitations defense. The court deemed the issue decided by Anderson, noted that Fluor Corp. cited no authority for its contention that the wrongful death exception was unconstitutional and concluded that it was best to adhere to the view that the statute is constitutional. Id. at 899-900.

II.

a.
Phipps grounds his claim on the federal constitution. We must begin with the acknowledgment that, notwithstanding what *359 was said or implied in Fluor Corp., the issue whether the wrongful death exclusion offends the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States was not addressed in Anderson. We recognized, implicitly, in Smith v. Fluor Corp., 514 So.2d 1227 (Miss. 1987), that Anderson did not dispose of claims grounded in the federal constitution. There we declined to reach the equal protection argument decided later in Reich because that argument had not been raised in the trial court not because it had been decided in Anderson. Id. at 1232. In Reich we considered what was said in Anderson not because Anderson had decided the federal constitutional issue but because in Anderson the court discussed the rational basis for the distinction between owners and builders and that distinction was what was at issue in both cases. Reich v. Jesco Co., 526 So.2d 550; Anderson v. Wagner, 402 So.2d 320. The discussion of the rational basis for the distinction is relevant to the test of its constitutionality under the Equal Protection Clause. Williams v. Taylor, 677 F.2d 510 (5th Cir.1982).
The distinction between wrongful death claimants and personal injury or property damage claimants was not before the court in either Reich or Anderson. I would hold that our decision in Fluor Corp., to the extent that it concerned a federal equal protection claim, is more properly viewed as a failure to reach the issue because of the court's perception that Fluor Corporation's argument was not properly supported by authority. 551 So.2d at 900 ("This court is under no obligation to consider this error without citation to authority.") We consider this issue, then, for the first time.

b.
Irby concedes that it has been unable to find any similar statute in the United States which makes a distinction between wrongful death and personal injury claimants. Supplemental Submission, November 22, 1991. It contends, nevertheless, that there is a rational basis for that distinction related to a legitimate state purpose because death is treated differently in a number of instances in our law, wrongful death actions are statutory, and the complaining party is a person other than the persons suffering the physical injury.
In a supplemental submission, Irby calls our attention to Townsend v. Gilbert, 616 So.2d 333 (Miss. 1993), in which we held that Miss. Code Ann. § 15-1-25 (1972) is not unconstitutional because it provides a shorter period of limitations against estates than the general period of limitations against tortfeasors. After noting that Townsend cited no authority for this flawed argument, we concluded that there was a legitimate governmental interest in finality, "particularly as to claims against estates" and that the statute of limitations was a rational means of serving that interest. Id.
We must consider Irby's suggestions, and any other basis that we may reasonably conceive, for a legitimate governmental interest, rationally served by the provision in question in light of the statute under consideration. Perry v. Grenada Municipal Separate School District, 300 F. Supp. 748 (N.D.Miss. 1969). What we have is a statute of repose designed to relieve the benefitted class of interminable exposure. It is wholly unrelated to either the time or the severity of an injury. It requires no extended analysis to observe that the differences here cited between a tort victim, who suffers death, and one who suffers other physical injury bare no rational relationship to the purpose of the statute in question. Death is not more or less likely to occur as a result of the errors receiving protection. If it is to be presumed, which we do not, that the monetary amount of the average death claim would be greater than the personal injury claim, this would seem all the more reason to include such claims with those against which the beneficiaries of the statute would be protected.
The fact that wrongful death claims are statutory also cuts against this exemption, for statutory claims are surely not less vulnerable to the legislative will than common law ones. It is also important to remember that our wrongful death statute, unlike those of some other jurisdictions, has no separate statute of limitations. Miss. Code Ann. § 11-7-13 (1972) Such actions are usually governed by the general statute of limitations. *360 Arender v. Smith County Hosp., 431 So.2d 491 (Miss. 1983). Whatever may be said for the rational basis in providing a different statute of limitations for death resulting injuries, we have no history of doing so. Moreover, statutes of limitation aside, no credible argument has been brought to our attention for a rational basis for exempting death claims from a statute of repose. In my view the statute violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

c.
Irby argues, and the majority agrees, that even if the wrongful death provision is unconstitutional it should simply be stricken from the statute leaving the remainder intact. The result would be that the Phipps' claim would still be barred. In my view, they are wrong. While it is true that we have recognized our duty to save that part of a statute that is constitutional where we can give effect to the intent of the legislation without invading the legislative province, we cannot do so here. See, Wilson v. Jones County Board of Supervisors, 342 So.2d 1293, 1296 (Miss. 1977); Compare, Tatro v. State, 372 So.2d 283 (Miss. 1979). The cases cited by the majority are distinguishable but nevertheless instructive.
The majority appears to rely upon the observation in Quinn v. Branning, 404 So.2d 1018 (Miss. 1981), that the statute there in question did not affect its challenger. The issue there was whether an amendment to a statute prohibiting hunting upon public roads to include "railroads within the boundaries of a hunting club unless permission is granted within a county wherein Highway 15 and 1-20 intersect" within the area of prohibition. Id. The local description refers to Newton County and the alleged violation occurred in Neshoba County. Id. at 1020. This prompted the observation fastened upon by the majority.
The focus of the challenge there was the local and private language "unless permission is granted within a county wherin Highway 15 and 1-20 intersect."[2] Unlike the instant case, there was no equal protection claim. Surely, where legislation such as this subjects one class of claimants to limitations to which it does not subject another class, the affected class, the one subjected to the limitation has a right to claim that there was no rational basis for subjecting it to the limitation to the exclusion of others similarly situated. O'Neal v. Simpson, 350 So.2d 998 (Miss. 1977). Under the rationale of the majority, the only party entitled to complain would be the party gaining the benefit of the limitation on the rights of others, not those suffering the burden.
The majority cites the dissent in Tatro v. State, 372 So.2d 283 (Miss. 1979). The prevailing opinion there, however, refused to validate a part of a criminal statute deemed unconstitutional because it was directed at male conduct only, leaving it to the legislature to determine whether it wanted to criminalize that conduct for females as well. Id. Lovorn v. Hathorn, 365 So.2d 947 (Miss. 1978), and Wilson v. Jones County Bd. of Supervisors, 342 So.2d 1293 (Miss. 1977), both dealt with local and private engraftments upon a general legislative scheme, one with respect to voting and the other with respect to taxation, that were easily excised. Id. To have invalidated the entire legislative scheme was clearly unwarranted. Similarly, in Howell v. State, 300 So.2d 774 (Miss. 1974), this Court properly declined to invalidate our controlled substances act because it deemed that portion allowing the State Board of Health to classify and reclassify drugs an unconstitutional delegation of legislative power. *361 Finally, in O'Neal the Court declined to invalidate a voting rights statutory scheme because the provision for assistance to illiterate voters was more restrictive than that for assistance to the blind and disabled voters. Clearly, the general scheme of the legislation was to enable voters to vote and it did not involve competing interests, such as those here between tortfeasor and injured party.
Here we have legislation of benefit to a narrow class of service and material providers, to the detriment of claimants injured as a result of their negligence. The legislature chose to favor some claimants with an exemption. Put another way, the legislature chose to restrict certain claimants and not others. In my view, as in Tatro, it is beyond our power to restrict the remedy of those claimants that the legislature did not choose to restrict. 372 So.2d at 284-285.
In this regard I find persuasive the views of the Kansas Supreme Court when faced with legislation restricting the collateral source rule to certain claims and not others. Thompson v. KFB Ins. Co., 252 Kan. 1010, 850 P.2d 773 (1993). After holding that a statute allowing evidence of payments from collateral sources in medical malpractice cases where the claim exceeds $150,000 unconstitutional as violative of equal protection, that court considered the separability issue as follows:
`While it is undoubtedly true that a statute may be constitutional in one part, and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to, the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statute.' (Syl. 1.)
* * * * * *
Here, the classification of plaintiffs is not a separate and independent provision because to eliminate the classification would change the scheme of the Act by making it applicable to all plaintiffs. This is contrary to the stated purpose that it only applies to plaintiffs claiming damages in excess of $150,000. The invalidity of the provision of K.S.A. 1992 Supp. 60-3802 classifying claimants by the amounts of their demand does affect the remainder of the Act because, absent the invalid provision, the intent of the legislature would not be carried out. Striking the invalid provision changes the scope of the Act and therefore does violence to the legislative intent.
Id. at 850 P.2d 782-783.
The wrongful death exemption did not pass the legislature in isolation. It accompanied a more far-reaching amendment which made the statute of repose applicable to latent as well as patent deficiencies. The statute was converted from one in which the owner would be deemed to have shouldered the responsibility for injuries occasioned by conditions known or reasonably knowable and, presumably, capable of modification or avoidance by warning, to one in which no one would be responsible after the period of prescription, the owner because of lack of knowledge and the builder or architect because of the passage of the prescribed time. I am not prepared to say what role the wrongful death exemption played in the legislative process leading to the adoption of this important amendment. Nor am I prepared to extend a limitation on remedy to a class of claimants that the legislature did not choose to limit. For that reason I am unable to conclude that the provision is severable.

III.
For the foregoing reasons I would reverse and remand this matter to the trial court.
PITTMAN and McRAE, JJ., join this dissent.
SULLIVAN, J., concurs in result.
McRAE, Justice, dissenting:
In these days of feverish appellate concentration upon a steady parade of criminal appeals, re-appeals and post-conviction proceedings, it may seem superfluous to reiterate that civil litigants, like professional criminals, are entitled to due process and equal protection under the law. The majority, *362 however, appears to have forgotten these principles by allowing Miss. Code Ann. § 15-1-41 (1972 and Supp. 1992) to provide a license to maim, but not to kill.
Merely because statutes of limitation are, by nature, arbitrary does not render a particular limiting statute constitutional. Moreover, § 15-1-41 is, in actuality, a statute of repose, upon which this Court generally looks with disfavor. In distinguishing between personal injury and wrongful death claimants, the statute raises compelling constitutional questions which warrant our most thoughtful consideration. There is no rational basis for this distinction. The same hazard or defect may kill one man and merely disable another. Should an asbestos manufacturer, for example, be rewarded because part of its shipment fortuitously is destined for installation on a ship and not the dry dock where it is constructed? Further, aspects of the statute are impermissibly vague under our constitution, and therefore, should be void.
Only in a topsy-turvy world can a seed flower and bear fruit before it is sown. One cannot die before conception, become widowed before marriage or cross a bridge that has not yet been built. Likewise, it is axiomatic that a statute of limitations cannot begin to run before a cause of action accrues. Thus we cannot address the equal protection questions raised by the statute without also examining the open courts provision of the Mississippi Constitution. One who causes a defect to remain for a long period of time before an injury occurs should not be protected by a statute of repose which is repugnant to our constitutional provision allowing redress for wrongs suffered.
Even the majority's finding that the statute passes constitutional muster raises yet another question: is § 15-1-41 applicable to Phipps' cause of action? Without any meaningful analysis, the majority glosses over the issue of whether the power line which caused Phipps' injury was an "improvement to real property." Glibly citing a handful of distinguishable cases,[1] the majority perfunctorily determines that it is. I disagree.
Today's decision displays a profound lack of empathy for the dynamics of our common law and those whose lives it affects. We cannot forget that the law is never settled until it is settled right; the law is never settled right until it is just, and a law is not just until it serves society to its fullest. Because the majority's decision fails totally to serve society, I dissent.

I.
At issue is whether Phipps' and Nationwide's claims[2] against the appellees, who, in 1947, designed and built the power line which caused his injuries in 1982, is precluded by Miss. Code Ann. § 15-1-41 (1972). The statute, at the time of Phipps' injury, provided a ten year statute of repose for bringing a tort action against those who designed, planned, constructed or supervised the construction of an "improvement to real property." It read as follows:
No action to recover damages for injury to property, real or personal, or for any injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or the construction of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury except by prior written agreement to the contrary, may be brought against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than ten (10) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.
This limitation shall not apply to any person, firm or corporation in actual possession *363 and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement causes injury. Provided, further, this limitation shall not apply to actions for wrongful death.
As amended, the statute now provides for a six year period of repose. It is otherwise substantively unchanged.[3]
Phipps presents a two-fold challenge to the constitutionality of Miss. Code Ann. § 15-1-41, asserting that it violates the equal protection clause of the fourteenth amendment to the United States Constitution and further, that it is void for vagueness. Looking first at the equal protection argument, we focus on the distinctions made within the statute between personal injury claimants and wrongful death actions, and within the larger scheme of our statutory framework, the distinction between the limitations for bringing an action caused by faulty design or construction/manufacture of products or personal property as opposed to "improvements to real property."[4]

II.
When considering an equal protection challenge to a statute where the enactment does not impinge upon a fundamental right,[5] the standard by which we must judge the statute is well settled: when the legislature draws a distinction between similarly situated individuals, the distinction must be grounded in a rational reason based on a legitimate state interest. Ward v. Winstead, 314 F. Supp. 1225, 1237 (N.D.Miss. 1970), appeal dismissed, 400 U.S. 1019, 91 S.Ct. 587, 27 L.Ed.2d 630 (1977); accord Williams v. Taylor, 677 F.2d 510, 516 (5th Cir.1982). The rationale for disparate classifications must be reasonable in light of the statute's purpose. Perry v. Grenada Municipal Separate School District, 300 F. Supp. 748 (N.D.Miss. 1969). Such a statute may not be set aside, however, if any set of facts reasonably may be conceived to justify it. McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Further, one who attacks the constitutionality of a statute bears the burden of showing clearly and beyond a reasonable doubt that the statute in question offends the constitution. Anderson v. Fred Wagner and Roy Anderson Jr., Inc., 402 So.2d 320, 321 (Miss. 1981). The party challenging the statute must overcome a presumption "that the legislature considered the effect of the statute, and that it acted with constitutional provisions and a desire to be fair and equitable." Mississippi State Tax Comm'n v. Tennessee Gas Transmission Co., 239 Miss. 191, 198-99, 116 So.2d 550, 552 (1959).
As Justice Banks discusses in his dissent, § 15-1-41 has survived several challenges to its constitutionality. See Anderson v. Wagner, 402 So.2d 320, 324 (Miss. 1981) (distinction between owners, on one hand, and builders and architects on the other, not arbitrary or capricious, or in violation of Miss. Const. Art. 4, § 87); Reich v. Jesco, Inc., 526 So.2d 550, 553 (Miss. 1988) (exclusion of owners and materialmen from the limitation did not violate fourteenth amendment to United States Constitution); Fluor Corp. v. Cook, 551 So.2d 897, 900 (Miss. 1989) (constitutionality of wrongful death exclusion raised, but not decided by the Court). We have not, however, expressly addressed or decided whether the statute's distinction between wrongful death *364 and personal injury claims passes constitutional muster.
Miss.Code § 15-1-41, like analogous statutes in other jurisdictions, was designed to protect architects, builders and contractors from infinite exposure to liability. The protection afforded this limited class is totally unrelated to the nature of the injury sustained or when it occurs. It should not matter whether the injuries suffered result in death or in prolonged and terrible pain and permanent disability. If a defective gas line constructed twelve years ago were to explode, killing one individual and maiming another, why should the decedent's family recover and the injured victim be precluded from even seeking damages from the negligent contractor or designer of the system? Is the legislature sending a message to contractors and designers that their duty of reasonable care is limited to the design and construction of improvements so as to prevent only death, but not serious injury? On the other hand, the statute provides only the most arbitrary protection from liability for contractors and designers, raising serious questions about the validity of any state interest involved. Protection under the statute is little more than a "crapshoot," predicated upon the stamina of the victim. The same design or construction defect in a power line that may cause "only" serious injuries to a sturdy workman in prime physical condition could easily kill a small child or an elderly person who came in contact with the wires.
Our wrongful death statute has no separate statute of limitations. Miss. Code Ann. § 11-7-13 (1972). Instead, actions brought under the wrongful death statute are governed by the general statute of limitations. Arender v. Smith County Hospital, 431 So.2d 491 (Miss. 1983).
Whatever may be said for the rational basis in providing a different statute of limitations for injuries resulting in death, we have no history of doing so. Moreover, statutes of limitation aside, no credible argument has been brought to our attention citing a rational basis for exempting death claims from a statute of repose. Neither in the products liability nor asbestosis statutes of limitation, for example, has the legislature drawn a line between personal injury claimants and wrongful death actions. Miss. Code Ann. § 15-1-49 (Supp. 1992). In products liability cases, the statute begins to run, without regard for whether death or merely an injury occurs, and without reference to when the item was manufactured, designed or obtained by the injured consumer, only when the injury occurs. Ford Motor Corp. v. Broadway, 374 So.2d 207, 209 (Miss. 1979). In negligence and products liability cases involving latent injury as well as in asbestosis cases, which, when insulation is involved, could conceivably include improvements to real property, we likewise employ a discovery standard. Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 707-708 (Miss. 1990). In that case, where the claimant had been exposed to asbestos since the 1940s, we did not distinguish between mere illness or injury and death.
In contrast, § 15-1-41, especially when juxtaposed against § 15-1-49, sets the stage for an impermissible violation of the fourteenth amendment. For example, the same asbestos insulation that is used in a building could be put into a ship which is docked fifty feet from the building and registered to the building's owner. A worker assigned to the ship who, over the years, developed asbestosis would have a cause of action against the manufacturer of the asbestos regardless of whether he died from the illness or merely became disabled. Under the Fifth Circuit's recent decision in Trust Co. Bank v. U.S. Gypsum Co., 950 F.2d 1144 (5th Cir.1992), however, a worker whose asbestosis developed from exposure to the fibers in the building would have no cause of action if he became ill. Only if he died would his heirs have any hope for recovering damages. This should not happen.
There being no demonstrable rational basis for distinguishing between personal injury plaintiffs and wrongful death claimants, § 15-1-41 stands in contravention to the fourteenth amendment to the United States Constitution.

III.
Any discussion of the equal protection question before us today is not complete *365 without also considering the closely related issue of whether § 15-1-41 stands in violation of the open courts provision of the Mississippi Constitution. In light of our imposition of a discovery standard in products liability actions, there exists no rational basis to distinguish between injuries caused by defective or dangerous items of personal property and those sustained as a result of defects in improvements to real property.
Art. 3, § 24 of the Mississippi Constitution provides:
All courts shall be open; and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.
Of the many jurisdictions which have struck down architects' and builders' statutes of repose as unconstitutional, a number have found these statutes to operate in violation of state constitution open courts provisions. Stilling v. Skankey, 784 P.2d 144 (Utah 1989); Daugaard v. Baltic Co-op. Build. Supply Ass'n, 349 N.W.2d 419 (S.D. 1984); Jackson v. Mannesmann Demag Corp., 435 So.2d 725 (Ala. 1983); Phillips v. ABC Builders, Inc., 611 P.2d 821 (Wyo. 1980); Overland Construction Co. v. Sirmons, 369 So.2d 572 (Fla. 1979).
In Utah, an architects' and builders' statute of repose analogous to § 15-1-41 was found to violate the open courts provision of art. 1, sec. 11 of the Utah constitution.[6]Horton v. Goldminer's Daughter, 785 P.2d 1087 (Utah 1989); Sun Valley Water Beds of Utah, Inc. v. Herm Hughes & Son, Inc., 782 P.2d 188 (Utah 1989). The Utah court developed a two-part test to determine whether a law passes constitutional muster under sec. 11.[7] Recognizing the legislative interest in promoting the social and economic welfare of its citizenry as well as the need to protect the right to a remedy for injuries as provided by sec. 11, the court enunciated the test as follows:
First, section 11 is satisfied if the law provides an injured person an effective and reasonable alternative remedy `by due course of law' for vindication of his constitutional interest. The benefit provided by the substitute must be substantially equal in value or other benefit to the remedy abrogated in providing essentially comparable substantive protection to one's person, property, or reputation, although the form of the substitute remedy may be different ...
Second, if there is no substitute or alternative remedy provided, abrogation of the remedy or cause of action may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective.
Horton, 785 P.2d at 1093, citing Berry, 717 P.2d at 680; Sun Valley, 782 P.2d at 191. Finding that the legislature had abolished Sun Valley's cause of action as well any remedy available to it, without creating an alternative or comparable substitute, and without, at the same time, eliminating any clear social evil, the court held that the statute of repose was "arbitrary and unreasonable" and did not achieve its statutory objective. Horton, 785 P.2d at 193. The court recognized that "no one has a vested right in any rule of law," but stated that that means:
neither the due process nor the open courts provision constitutionalizes the common law or otherwise freezes the law governing private rights and remedies as of the time of statehood ... However, once a cause of action under a particular rule of law accrues to a person by virtue of an injury to his rights, that person's interest in the cause of action and the law which is the basis for a legal action becomes vested, and a legislative repeal of the law cannot constitutionally divest the injured person of the right to litigate the cause of action to a judgment.
Id. at 192, citing Berry, 717 P.2d at 676.
In Jackson v. Mannesmann Demag Corp., 435 So.2d 725 (Ala. 1983), the court in our *366 sister state analogized Alabama's architects' and builders' statute of repose to a products liability statute, and found that it violated the open courts provision of the Alabama Constitution.[8] The Alabama court employed much the same analysis used by the Utah court to find that the seven year statute of repose, § 6-5-218, Code of Alabama 1975, which did not distinguish between wrongful death and personal injury actions, was unconstitutional.[9] The court held that the statute served no purpose in the eradication of any particular social evil or injustice. Id. at 728. Moreover, the court further found that the statute provided no "savings clause" and that its failure to make provision for those injured shortly before the end of the limitations period made it arbitrary on its face. Id.
Miss. Code Ann. § 15-1-41 leaves Jimmy Phipps and other similarly situated plaintiffs without any effective and reasonable alternative remedy or recourse. Granted, the limitations provision does not appear to apply to the owner or tenant in actual control of the subject improvement to real property. However, because the legislature has extended the limit to latent as well as patent defects, a party injured by a latent defect has no meaningful recourse against the party in control, who, more likely than not, would be unaware of the defect and could not be found negligent. Moreover, when, as in Phipps' case, the party in control is the employer of the injured party, the exclusivity of the worker's compensation remedy severely constricts the scope of relief available. Because it affords no compensation for damages such as pain and suffering or loss of consortium, worker's compensation, the only alternative remedy available to Phipps, cannot be said to provide either comparable benefits or essentially comparable substantive protection.
There being no effective and reasonable alternative remedy available, we look next at whether § 15-1-41 serves to eliminate a social or economic evil so grave as to warrant the abrogation of a legal remedy. Further, is the removal of the plaintiff's remedy an arbitrary and unreasonable means for achieving that end? Like other such statutes enacted across the country, § 15-1-41 was enacted to afford economic protection to architects, engineers and builders against infinite liability. See generally Comment, Recent Statutory Developments Concerning the Limitations of Actions Against Architects, Engineers and Builders, 60 Ky.L.J. 462, 464 (1972). First, I am compelled to reiterate that designers and manufacturers of personal property are no longer so insulated. Moreover, as the Utah court pointed out, architects' and builders' statutes of repose do little to protect the industry from devastating economic loss long after a project is complete since only 2.1 percent of claims nationwide are initiated subsequent to seven years after completion. Sun Valley Water Beds, 782 P.2d at 193, citing Note, The Constitutionality of Statutes of Repose: Federalism Reigns, 38 Vand.L.Rev. 627, 633-634 (1985).[10] Given the relatively small pool of potential litigants, who better is able to bear the economic burden of the injuries suffered? Who, likewise, is in a better position to prevent these injuries? It can hardly be argued that the potential burden on the building industry is so great as to justify the abridgement of the rights of a small group of plaintiffs. Moreover, the removal of the remedy appears to be merely an arbitrary solution to achieving the protection the industry sought.
Proponents of statutes of repose assert that some measures are necessary to provide an element of finality and protect potential defendants from perpetual liability. Generally, three arguments are made: that buildings and other improvements to real property have a very long useful life as opposed to other products; that this longevity provides ample opportunity for intervening acts of *367 negligence; and finally, that if suit is brought long after a project is completed, any evidence would be stale. To the first argument, the Alabama court in Jackson raised the analogy to products liability cases and responded:
We are of the opinion that the comparatively longer useful life of a building or other improvement militates against, rather in favor of, the conclusion advocated by the defendants. In Lankford [v. Sullivan, Long & Hagerty, 416 So.2d 996 (Ala. 1982)] we pointed to the long life expectancy of certain types of products as indicative of the inherent unfairness of a statute which arbitrarily limits the rights of injured parties irrespective of the useful life of the products. Lankford, supra, at 1002-1003. As Chief Justice Torbert stated in his concurring opinion in Lankford, "A manufacturer should be required to produce a product that can be safely used during that period of its intended use, not for some arbitrary period of time that is applied to all products," 416 So.2d at 1006, quoting Comment, Alabama's Products Liability Statute of Repose, 11 Cum.L.Rev. 163, 180 (1980). That rational [sic] applies a fortiori to the case at bar.
435 So.2d at 725.
In addressing the second contention, the Alabama court emphasized that the specter of intervening acts of negligence places a concurrently heavier burden of proof on the plaintiff. The Jackson court observed:
Next, the defendants argue that "the longer the period of time between the completion of the structure and the injury, the greater the opportunities for some intervening negligence to occur." The defendant's argument fails to take into account the requirement of the plaintiff to prove that his injuries were the proximate result of the defendant's negligence. If the injury in question was the result of the intervening negligence of the owner or some other third party, the plaintiff would not, of course, be entitled to recover against the builder. The problem with the defendant's argument is that latent defects in a building caused by the builder may not produce injuries until the seven year period has elapsed. The fact that an injured plaintiff would still have a cause of action against the owner of the building is not sufficient to justify insulating the builder from all liability. If the plaintiff proves that his injuries were the proximate result of the builder's negligence, recovery should be had against the builder.
435 So.2d at 727 (emphasis added). See also McFadden v. Ten-T Corp., 529 So.2d 192, 198 (Ala. 1988).
Finally, in finding that Florida's architects' and builders' statute of repose violated the open courts provision of that state's constitution, the court in Overland Construction Co. v. Sirmons, 369 So.2d 572 (Fla. 1979), addressed the evidentiary arguments favoring the limitation of such actions:
We recognize the problems which inhere in exposing builders and related professionals to potential liability for an indefinite period of time after an improvement to real property has been completed. Undoubtedly, the passage of time does aggravate the difficulty of producing reliable evidence, and it is likely that advances in technology tend to push industry standards inexorably higher. The impact of these problems, however, is felt by all litigants. Moreover, the difficulties of proof would seem to fall at least as heavily on injured plaintiffs, who must generally carry the initial burden of establishing that the defendant was negligent. In any event, these problems are not unique to the construction industry, and they are not sufficiently compelling to justify the enactment of legislation which, without providing an alternative means of redress, totally abolishes an injured person's cause of action. The legislation impermissibly benefits only one class of defendants, at the expense of an injured party's right to sue, and in violation of our constitutional guarantee of access to courts.
369 So.2d at 574 (emphasis added). Thus, when bringing suit against an architect or builder many years after construction is completed, the hurdles faced by the injured plaintiff are so great as to counter any policy arguments focusing on the need for finality. Further, as § 15-1-41 is written, there is *368 finality only if a plaintiff is injured; if the negligence of the same builder or contractor results in death, § 15-1-49 keeps the cause of action alive for three years after the fatal event, regardless of when the improvement was made and how many years afterward the fatal event occurred.

IV.
I further find merit in Phipps' argument that the statute is void for vagueness. We have stated that:
[a] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127-28, 70 L.Ed. 322, 328 (1926). Vague laws do not allow fair warning so that the ordinary citizen may behave in a law-abiding manner. Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222, 227-28 (1972).
Vance v. Lincoln County Dept. of Public Welfare, 582 So.2d 414 (Miss. 1991). I am particularly troubled by that part of the statute which reads:
[t]his limitation shall not apply to any person, firm or corporation in actual possession and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement causes injury.
As Phipps suggests and my own reading of this language confirms, "men of common intelligence must necessarily guess" whether the legislature meant to exclude suits against owners and tenants or suits by owners and tenants.

V.
Even if we are to accept the majority's premise that the statute, as written, passes constitutional muster, we must still consider whether § 15-1-41 is applicable to Phipps' claim. The threshold question is whether the power line constitutes an "improvement" to real property as contemplated by the statute. We have never expressed a general definition of the term "improvement to real property." In Smith v. Fluor Corp., 514 So.2d 1227, 1230 (Miss. 1987), we stated, however, that "a definition of the phrase must follow the plain and ordinary meaning of the terms within the statute." Smith involved a suit by a gas refinery employee who was injured in an explosion allegedly caused by a faulty heat exchanger attached to piping within the plant. The Court determined that the heat exchanger was an "improvement to real property" within the meaning of § 15-1-41. Id. at 1230. The Smith Court noted that decisions construing statutes from other jurisdictions similar to § 15-1-41 indicate that "`improvement to real property' covers a wide range of structures and/or components thereof." Id. at 1230. That decision further noted that "it is apparent that an object need not be a `fixture' to be an improvement to real property." Smith, 514 So.2d at 1230; accord Keeler v. Pennsylvania Dept. of Transportation, 56 Pa.Cmwlth. 236, 424 A.2d 614, 616 (1981) ("While a fixture is, by definition, an improvement to real property, the converse is not true; an improvement to real property in the ordinary sense of the term, need not be a fixture").
Black's Law Dictionary defines "improvement" as:
[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc.
Black's Law Dictionary at 682 (5th ed. 1979); see also 41 Am.Jur.2d Improvements § 1 at 479 (1968) (improvement "includes everything that permanently enhances the value of premises for general uses").
Decisions from other jurisdictions indicate a split of authority on the question of whether power lines constitute improvements to real property. Phipps relies primarily on two cases from Georgia. In Turner v. Marable-Pirkle, Inc., 238 Ga. 517, 233 S.E.2d 773 (1977), the Georgia Supreme Court held that *369 a ground wire running from a utility pole was not an "improvement" within the meaning of a statute similar to § 15-1-41. In Atlanta Gas Light Co. v. City of Atlanta, 160 Ga. App. 396, 287 S.E.2d 229 (1981), the Georgia Court addressed an analogous question and held that an underground gas line likewise did not constitute an improvement to real property. The gas line, which ran to a waterworks pumping station owned by the City of Atlanta, was defective and caused an explosion. The Court cited Turner and explained that the gas line "is more appropriately considered an extension of the utility's distribution system than an improvement to property owned by the plaintiff." Atlanta Gas, 160 Ga. App. at 398, 287 S.E.2d at 233. The opinion does not reveal whether an easement interest existed to which the pipe line may have added value. The most recent case to discuss the issue of whether utility lines constitute improvements to real property for statute of limitation purposes is Washington v. City of Elizabeth, 245 N.J. Super. 325, 585 A.2d 431 (1990). The Court reasoned that as a matter of "common sense," underground telephone lines do not constitute improvements to real property since they do not add to the value of the property. However, the Court based its decision partly on the fact that underground lines do not change the topography of the land. The Court seemed to view a change in topography as one factor tending to qualify an object as an "improvement."
In those cases which found that a power line constituted an improvement to real property, the courts focused on whether the subject lines added value to the property. As distinguished from the case sub judice, the power lines in these cases provided power to the properties on which the injuries occurred. In Mora-San Miguel Electric Cooperative, Inc. v. Hicks & Ragland Consulting and Engineering Co., 93 N.M. 175, 598 P.2d 218 (N.M.Ct.App. 1979), the New Mexico court affirmed a summary judgment holding that the installation of a power line was an improvement to real property within the meaning of a statute of repose similar to § 15-1-41. Mora-San Miguel was cited with approval in Collins v. Trinity Indus., Inc., 671 F. Supp. 449, 452 (S.D.Miss. 1987) (applying Mississippi's § 15-1-41 in case which did not involve public utility distribution systems), aff'd, 861 F.2d 1364 (5th Cir.1988). Likewise in Washington Natural Gas Co. v. Tyee Construction Co., 611 P.2d 1378, 1380-81 (Wash. Ct. App. 1980), the court found that underground electric lines added to the value of the subdivision property on which they were located and which they served. The court accordingly held that the lines constituted improvements to real property. Tyee Construction Co. may be distinguished from the case sub judice in the same manner as Mora-San Miguel. In Delgadillo v. City of Socorro, 104 N.M. 476, 723 P.2d 245 (1986), the court expressly rejected the reasoning of Atlanta Gas, supra, and held that gas lines constitute improvements to real property. In the words of the Court: "We find no logical basis for concluding that improvements to utility systems, such as new pipe lines, cannot constitute physical improvements to real property." The Court noted that gas lines add to the value of property for the purpose of the property's intended use. It is once again noteworthy, however, that the utility lines in Delgadillo brought gas service to the property on which they were located. See also City of Dover v. International Telephone & Telegraph Corp., 514 A.2d 1086 (Del. 1986) (holding that utility pole is improvement to real property for purposes of statute of limitation where limitations bar included a statutory definition of "improvement" which did not require the object to add value to the property on which it was located); Montaup Electric Co. v. Ohio Brass Co., 561 F. Supp. 740 (D.R.I. 1983) (electric transmission line was improvement to real property because it wrought a change in the topography of the land and added value to an easement).
Where, as in the case sub judice, the record does not indicate whether the power line serviced the property on which the injury occurred and there are affidavits stating that the power line did not enhance the value to the property, the rationale of the Georgia court in Atlanta Gas, supra, that a gas line "is more appropriately considered an extension of the utility's distribution system than an improvement to property" appears to be *370 the sounder approach. 160 Ga. App. at 398, 287 S.E.2d at 233. Furthermore, to base our determination of whether a power line is an improvement to real property on such arbitrary distinctions as enhancement of value or a change in the topography of the land would lead to often inequitable results. Why should we distinguish between, for example, an underground gas line and an above ground power line, when a design or construction flaw in either could prove equally disastrous?
The same questions now before us were raised in Trust Co. Bank v. U.S. Gypsum Co., 950 F.2d 1144 (5th Cir.1992), wherein the Fifth Circuit found that asbestos fireproofing constituted an "improvement to real property." Trust Co. built a new bank building in 1969, which was outfitted with asbestos fireproofing. Some years later, Trust Co. initiated an asbestos abatement program. In 1989, it brought suit against U.S. Gypsum, the manufacturer of the asbestos fireproofing product, to recover some of the costs of its abatement effort. Trust Co. alleged that U.S. Gypsum manufactured defective and unreasonably dangerous products, knowing that they could release toxic fibers.
Looking at Miss. Code Ann. § 15-1-41, the Trust Co. court found that the coverage afforded by the statute is "large." Id. at 1151, citing Anderson v. Fred Wagner and Roy Anderson, Jr., Inc., 402 So.2d 320, 324 (Miss. 1981). The court found that "[t]his language includes manufacturers who, like defendant USG, furnish the design for improvements to real property." Id. It cited no basis for the finding that the manufacturer designed the "improvement" to the property. Interestingly, the court cites the 1991 Code Supplement, but in quoting the statute, omitted that section which states that § 15-1-41 does not apply to owners of the subject property.
The Fifth Circuit further found that the fireproofing materials constituted improvements to real property for purposes of applicability of the statute. Citing Collins v. Trinity Industries, Inc., 861 F.2d 1364, 1365 (5th Cir.1988), the court defined "improvement to real property" as follows:
the term improvement must be given its customary meaning. Common definitions of the term generally refer to a permanent addition that increases the value of the property and makes it more useful.
The court found that "there is little doubt that the fireproofing materials in this case increased the value of the bank building and made it more useful" and thus found that they constituted an improvement as contemplated by the statute. It is rather ironic that an inherently hazardous substance known to cause illness or death could be considered an "improvement." Moreover, the fireproofing materials at issue clearly were not permanent, since Trust Co., albeit at great expense, removed them. Further, in light of the many federal mandates to remove asbestos from buildings, I fail to see how the court could find that it added to the building's value and made it more useful. If anything, it decreased the building's value and made it dangerous.
Because Trust Co. waited until after the final judgment to raise its equal protection arguments, the court found that it had waived its right to raise the argument on appeal and thus did not discuss it.
The Fifth Circuit's application of § 15-1-41 to the particular facts of the Trust Co. case very vividly illustrates the basic problem with the statute. On one hand, the manufacturer, designer, or contractor who installs what turns out to be a deadly product in a building or any other "real property" is shielded from tort liability after six years from the time of installation. On the other hand, Miss. Code Ann. § 15-1-49(2) provides that for latent diseases or injuries such as asbestosis, "the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered the injury." In Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 709 (Miss. 1990), we expressly found "that a discovery rule exists in conjunction with § 15-1-49 (1972) in the case of a negligence or products liability cause of action involving latent disease." Edwards had been routinely exposed to asbestos between the 1940's and 1976 while he installed insulation materials in boats at Ingalls shipyard. In 1986, he was diagnosed with asbestosis. There is no reason why a distinction should be made between installation *371 of asbestos insulation in a ship and asbestos fireproofing in a building with regard to the liability of a manufacturer for the costs of putting a deadly product into the stream of commerce. Similarly, why should we make a distinction between a water heater or a whirlpool bath installed in a mobile home with wheels (personal property) and one which has had its wheels removed (real property)? Moreover, there should be no distinction made between a plaintiff recovering for injuries sustained and one seeking to recover some of the costs of preventing future injuries. Ultimately, the costs should be born by the manufacturer or contractor who originally benefitted from the sales of his product, building or design and who is the best position to avoid inflicting harm.
In recent years, the discovery standard has been applied to other statutes of limitation where "inherently indiscoverable" injuries are involved. See Williams v. Kilgore, 618 So.2d 51 (Miss. 1992) (discovery rule applied to medical malpractice actions involving latent injuries); Staheli v. Smith, 548 So.2d 1299 (Miss. 1989) (discovery rule applies to time of accrual of defamation action under Miss. Code Ann. § 15-1-35); Benoit Elevator Co. v. Mitchell, 485 So.2d 1068 (Miss. 1986) (application of discovery rule to Miss. Code Ann. § 71-3-35(1) for workers compensation benefits for latent injuries). In light of our increasing acceptance of the discovery standard for cases involving latent injuries and diseases, § 15-1-41 contradicts both our case law and our statutory law.

VI.
Because there exists no rational reason or legitimate state interest for making a distinction between victims who are injured and those who succumb to their injuries, and likewise, between plaintiffs who are injured by defects in improvements to real property as opposed to those who suffer injuries because of defects in products classified as personal property, § 15-1-41 stands in violation of the equal protection clause of the fourteenth amendment to the United States Constitution. Moreover, the statute contravenes the open courts provision of the Mississippi Constitution.
Cases from other jurisdictions which specifically address the issue of whether a power line constitutes an improvement to real property as well as the evidence in the record provide little support for the majority's holding that a power line is an improvement to real property as contemplated by § 15-1-41. The decisions of the Georgia court, which have found gas and power lines to be "an extension of the utilities' distribution system" rather than improvement to real property, present the better-reasoned view.
Finally, the Fifth Circuit's analysis of § 15-1-41 in Trust Co. points up the folly of the constitutional and definitional conclusions the majority reaches in the case sub judice. It further illustrates the hopeless conflict between § 15-1-41 and our statutes governing other latent injuries, wherein we have consistently adhered to a discovery standard.
In light of today's short-sighted decision, the legislature hopefully will face its responsibility to repeal § 15-1-41. The law is never settled until it is settled right. It cannot be settled right until it is just. The law cannot be just until it serves society to its fullest. Today this was not done. I query whether the majority might find otherwise if a gas line servicing a school building were to explode seven or eight years after it was installed, maiming some children and killing others.
Accordingly, I dissent.
SULLIVAN, J., joins this opinion.
BANKS, J., concurs in parts II and V.
NOTES
[1] 397
Senate Bill No. 1652
... .
Section 1. No action to recover damages for injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of any patent deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury except by prior written agreement to the contrary, may be brought against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than ten (10) years after the written acceptance of such construction by the owner pursuant to the performance or furnishing of such services and construction. This limitation shall not apply to any person, firm or corporation in actual possession and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the damages or injury for which it is proposed to bring an action as heretofore controlled by other statute or the laws of Mississippi regarding tort or negligence actions... .
[2] By ch. 332, Laws 1985 and ch. 505, Laws 1985, Miss. Code Ann. § 15-1-41 has again been amended to reduce the time period within which suit could be brought from ten to six years.
[3] In Reich v. Jesco, Inc., 526 So.2d 550 (Miss. 1988), an owner sued the contractor/builder, who pled the statute. The owner challenged the constitutionality of the act on the ground that it violated the equal protection clause in removing owners from the bar, but not builders. We rejected this argument as well noting the absence of "persuasive federal authority." Id., 526 So.2d at 553-54. Likewise, in Fluor Corp. v. Cook, 551 So.2d at 900, we found no "such [federal] authority."
[1] No claim base on Sec. 24 is lodged by Phipps. It is a question which deserves reexamination in the proper case. As noted above, the Anderson court only implicitly rejected a § 24 challenge to the statute in question. It seemed to assume that if there is a legitimate governmental interest and the means chosen is rationally related to that interest, there is no § 24 impediment to a legislative act. That court referred to dicta in Walters v. Blackledge for which it is difficult to find a basis. The writer's research leads him to believe that the statement that the legislature can abolish common-law remedies for torts which have not yet occurred is based on the pronouncements of courts in states, with some exceptions, which have no open courts provision, or where the open courts provision was not raised. For example, one source cited by the Blackledge court is Mackin v. Detroit-Timkin Axle Co., 187 Mich. 8, 153 N.W. 49, 51 (1915). 220 Miss. at 509, 71 So.2d 433. That state had no constitutional provision regarding open courts comparable to our own. Some of the courts of those states which do have a provision similar to our § 24 have been much less willing to grant legislative carte blanche with regard to common law remedies. In Florida, for example, the court considers the open courts provision to require either an alternative remedy or a compelling reason before the legislature may abolish a common law remedy extant at the time of the adoption of the constitution.

The polestar decision for the construction of this provision is Kluger v. White, 281 So.2d 1, 4 (Fla. 1973), in which we held:
[W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
Overland Const. Co., Inc. v. Sirmons, 369 So.2d 572, 573 (Fla. 1979).
See also, the cases cited by Justice McRae in his dissent here. It should suffice there is a division of authority whether open courts provisions serve as restrictions upon legislative actions. See, CJS, Const.Law §§ 1428, et seq., and cases cited therein.
[2] Quinn provides a perfect example of partial validation gone awry. The language focused upon by the court was a part of a floor amendment to general legislation regarding game and fish laws. Chapter 569, General Laws of Mississippi 1974; House Journal, 1974, Regular Session, p. 527. The entire amendment read "or railroads within the boundaries of a hunting club unless permission is granted in a county wherein Highway 15 and I-20 intersect." This court struck only the language beginning with "unless". It then held that because that language was stricken and affidavit charging that the defendant hunted on a public road was no longer an offense under the statute. Id. at 1120. The basis for that ruling is that the court interpreted the statute with the remaining language of the amendment as applying not only to railroads but streets and public highways as well. Thus, hunting on streets and public highways was no longer a crime unless the street or highway was "within the boundaries of a hunting club." Id.
[1] Despite a plethora of cases from other jurisdictions, discussed infra, which address the specific issue of whether power lines constitute "improvements to real property," the majority finds cases dealing with the installation of equipment, machinery and whirlpool baths in buildings as well as lights, signs and guardrails on highways to be dispositive of Phipps' case.
[2] Nationwide, as the Worker's Compensation carrier, is subrogated to the owner of the power line and the easement.
[3] As originally enacted in 1966, the statute referred only to "patent" defects and made no distinction between wrongful death and injuries to persons or property. Chapter 397, Laws of 1966. In 1972, the statute was amended to cover "any deficiency" and added the exception for wrongful death claims.
[4] Phipps admits and the Appellees emphasize that we have already addressed the constitutionality of excluding property owners and materialmen from the stature and resolved it contrary to Phipps' position in Reich v. Jesco, Inc., 526 So.2d 550 (Miss. 1988).
[5] According to Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945), the shelter of a statute of limitation "has never been regarded as what now is called a `fundamental' right or what used to be called a `natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control."
[6] Utah Code Ann. § 78-12-25.5 provided for a seven year statute of repose and, as distinguished from § 15-1-41, made no distinction between wrongful death and personal injury claims.
[7] The test employed by the Utah court was first developed and applied in the products liability context in Berry ex rel. Berry v. Beech Aircraft Co., 717 P.2d 670, 680 (Utah 1985).
[8] Art. 1, sec. 13 of the Alabama Constitution is identical to sec. 24 of the Mississippi Constitution.
[9] An earlier version of the statute was struck down on other grounds in Bagby Elevator and Electric Co. v. McBride, 292 Ala. 191, 291 So.2d 306 (1974).
[10] Ninety-seven and seven-tenths percent of all claims against architects are brought within seven years after construction is completed. C.H. Collins, Limitation of Action Statutes for Architects and Builders  An Examination of Constitutionality, 29 Fed'n Ins.Couns.Q. 41, 47-48 (1978).